JACKSON COUNTY LIGHT, HEAT & POWER COMPANY, Appellant, THE CITY OF INDEPENDENCE, MISSOURI, Respondent.

Kansas City Court of Appeals, February 15, 1915.

1. **FRANCHISES: Forfeitures: Recovery of Deposit: Contracts: Construction.** Where a contract is so worded as to cause it to be the subject of diametrically opposite constructions by the parties thereto, it is not so plain and unambiguous as to limit the court to its terms in a judicial construction thereof.

2. ———: ———: ———: ———: ———. The cardinal rule in construing a contract is to ascertain its true intent. If the language is so plain that there can be but one meaning to it, then there is no office to be performed by subsidiary aids to construction. But where such is not the case, courts can, in addition to looking at the language of a contract, which is always the highest and most powerful authority in the matter, look at all the circumstances, the subject-matter of the contract, the situation of the parties and the purposes sought to be accomplished.

3. ———: ———: ———: ———: ———. A city granted a franchise to a gas company to sell natural or artificial gas. It was required to furnish artificial gas so long as it was generally used in the city, but was required to furnish natural gas only so long as it was possible to do so. *Held,* that if it was never reasonably possible to furnish natural gas, the company was not required to bring natural gas to the city, and in a suit to recover a deposit made to insure compliance with the terms of the contract in this respect, it was error to sustain a

demurrer to plaintiff's evidence on the question of the reasonable possibility of obtaining natural gas.

4. ————: ————: ————: ————: ————. A construction which makes a contract mean that a company having the exclusive authority to vend gas is not required to furnish or sell natural gas unless it is reasonably possible to do so, and yet is required to bring that kind of gas at all events to the city limits under penalty of $5000 forfeit if it fails to do so, is not a reasonable construction. All parts of a contract must be considered and they must be harmonized if possible, but the construction placed thereon must be reasonable and natural.

5. ————: ————: **Penalty or Liquidated Damages.** Whether a deposit can be considered as a forfeiture or as liquidated damages depends upon the facts of the case and is not controlled by what the contract calls it. Liquidated damages can be recovered only when there is more than nominal damages to the other party. If there has been no damages sustained, the deposit can only be regarded as a forfeiture. Forfeitures are not looked upon with favor, but contracts providing therefor will be strictly construed in determining whether or not a forfeiture will be declared.

6. ————: ————: **Recovery of Deposit: Limitations.** The right to sue at any time before the Statute of Limitation has run remains unimpaired during that whole time unless the plaintiff has in the meantime done something to bring the principle of estoppel into action.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Paxton & Rose* for appellant.

*John F. Thice* and *A. C. Southern* for respondent.

TRIMBLE, J.—This is a suit by appellant against the city of Independence to recover a deposit of $5000 made with the city by appellant under the terms of an ordinance submitting to the voters of said city a franchise for the furnishing and sale of artificial and natural gas. The deposit was required to insure appellant's performance of the conditions of said ordi-

nance when ratified by the voters and accepted by the Gas Company. The ordinance was duly ratified at an election called for that purpose, the franchise thereby granted was duly accepted and the deposit was made.

Appellant's claim is that having performed the conditions of said franchise it is entitled to the return of it deposit. The city's contention is that appellant is not entitled to a return thereof because of a failure to perform one of the terms and conditions of the franchise, namely, the duty to bring natural gas to said city and furnish it to the inhabitants thereof. The city takes the position that the terms of the franchise bind the appellant to furnish natural gas at all events; while appellant says it was required to do this only in the event that such was reasonably possible, and offered evidence clearly tending to show that it was not possible to obtain it. The trial court construed the franchise to be as the city claimed, and sustained a demurrer to apellant's evidence.

Each side seems to think the contract plain and unambiguous and that by its explicit terms it fully supports their respective contentions. We think the fact that the parties entertain these diametrically opposite views as to the meaning of the contract, as well as the wording of the contract itself, justifies us in taking into consideration not merely the whole contract, giving effect to every part thereof, but also the circumstances surrounding the parties, the nature of the contract and its subject-matter, in the endeavor to get at its true meaning, effect and intention. The cardinal rule in construing a contract is to ascertain its true intent and enforce that. If the language employed is so plain that there can be but one meaning to it, then of course there is no office to be performed by subsidiary aids to construction. [St. Louis v. St. Louis, etc., R. Co., 228 Mo. 712, l. c. 736.] But a contract which gives rise to such divergent views as those

entertained by the parties to the one before us is certainly not one so explicit as to leave no occasion or authority for calling to our help such subsidiary aids in arriving at its proper construction. Therefore, keeping in mind that the entire language chosen by the parties to express their meaning is the highest and most powerful authority in the matter, we may, in addition thereto, look at all the circumstances of the case, the nature of the matter involved, the situation and relation of the parties, and the purpose sought to be accomplished. [Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, l. c. 63; Del Bondio v. Dold Packing Co., 79 Mo. App. 465, l. c. 471; Carney v. Chillicothe Water and Light Co., 76 Mo. App. 532, l. c. 536.]

The ordinance embodying the terms of the franchise or contract under which the deposit was made, was passed July 17, 1906.

At and prior to that time, the appellant, under the name of the Independence Gas and Coke Company, was furnishing artificial gas to the city under a franchise having sixteen years to run. The charges provided therein were $1.35 per thousand cubic feet so long as the annual consumption did not exceed thirty million cubic feet per year, $1.25 per thousand when such consumption was between thirty million and fifty million cubic feet, and $1.10 per thousand when the annual sales exceeded fifty million cubic feet.

Shortly prior to this, natural gas had been discovered in Kansas and Oklahoma in such quantities as that it could be piped considerable distance to cities desiring to use it. The Kansas Natural Gas Company had a pipe line coming to Kansas City and natural gas had already been turned on in Kansas City, Kansas, and was soon to be turned on in Kansas City, Missouri. It was thought there was a chance for Independence to get natural gas from this source as soon as Kansas City was supplied. But a greater chance appeared

to lay in the fact that gas had been discovered at Stanley, Kansas, about twenty miles from Independence; and while Independence would require one million cubic feet a day and the wells at Stanley were producing only 300,000 feet per day, it was confidently hoped and thought that the sinking of additional wells would secure enough gas to supply the needs of the defendant city.

The officers of appellant took the members of the city council over to Stanley, and guaged the wells in their presence and let them see just what was there, and the prospect for getting an adequate supply of natural gas. Appellant had no gas wells of its own and all parties knew it had none, nor did it pretend to own any.

Thereupon the ordinance embodying the contract and new franchise was drawn. It ran for twenty years from the day said ordinance became effective, and granted permission to appellant to construct, maintain, and operate gasworks in the city, to lay pipes in the streets and to furnish through such pipes natural or artificial gas during the whole period of that time. The charge for artificial gas should not exceed $1.35 per thousand cubic feet for the first five years of the franchise, $1.25 for the next five years, and $1.10 for the remainder of the term, with a discount of ten cents per thousand on payment of bills by the tenth of each month. For natural gas the charge was not to exceed twenty-five cents per thousand with a ten per cent increase if bills were not paid by the tenth of each month. If at any time the supply of natural gas showed signs of failing or be insufficient to supply domestic wants, the gas company had the privilege of shutting off wholly or in part the supply for manufacturing or power purposes.

By section 7, appellant was required to manufacture and furnish a full and sufficient supply of artificial

gas of not less than eighteen candle power to meet the demand so long as artificial gas was generally used in the city.

Section 9 of said ordinance granted to appellant the right to sell and distribute, or sell or distribute natural or artificial gas to the inhabitants of said city whether the source of supply came from within or without the corporate limits of the city, and to pipe, sell, and distribute, or sell or distribute, natural. or artificial gas to the inhabitants of Jackson county outside of Independence even though the source of supply was within the corporate limits of said city.

Section 12 of said ordinance provided that "said grantee shall furnish natural gas under this ordinance so long as it shall be reasonably possible so to do, and said grantee, its successors or assigns, shall bring or cause to be brought, natural gas to the corporate boundaries of said city within six (6) months after the right hereby granted shall have been consented to by a majority of the qualified voters of said city, voting at an election held for that purpose, and shall within the next succeeding three (3) months, be furnishing natural gas to consumers within the city of Independence in substantial compliance with the terms and provisions of this ordinance. Provided, however, that the time within which said company is required to supply natural gas under this ordinance is made contingent upon the ability of the pipe line company to supply gas; strikes, accidents, other street contractors, injunction, other causes beyond the control of the grantee, or the council may for any good cause extend the time granted."

By section 14, appellant was required to "deposit with the city treasurer of the city of Independence, Missouri, the sum of five thousand ($5000) dollars to insure the faithful performance of the provisions of this ordinance on its part, and in case of failure or refusal on the part of said grantee to keep and perform all the

provisions and conditions of this ordinance on its part, it shall forfeit to the city of Independence the sum of five thousand ($5000) dollars deposited as aforesaid as the agreed and liquidated amount of damages for such failure or refusal to perform the conditions of this ordinance; provided further that any delays occasioned by injunction or other legal proceedings or by strikes or labor troubles or unavoidable accidents shall not be counted as any part of the time herein mentioned for the performance of any act under this ordinance, or other cause beyond the control of the grantee.''

Section 15 provided that if said franchise failed to carry at the election then the $5000 was to be returned to appellant, but if it carried ''then said sum of five thousand ($5000) dollars shall be returned to said grantee, its successors or assigns, as soon as at least five thousand ($5000) dollars shall have been in good faith expended within the corporate limits of the city of Independence in work, labor and material therein, in carrying out the provisions of this ordinance, and said grantee shall have complied with the provisions of section 12 of this ordinance, requiring it to have said gas to the corporate limits of the city within six months.''

Section 16 provided that the franchise therein specified was given to appellant as the successor to the Independence Gas and Coke Company, and upon the acceptance of the franchise and the ratification thereof by the voters, the former franchise granted January 17, 1902, should be thereby repealed. But in no event was the failure of the grantee in the new franchise to furnish natural gas thereunder to work a forfeiture of the franchise to furnish artificial gas granted in the new ordinance.

It would seem from the foregoing resume of the contract that the very best construction which the city can now claim in its favor is that the language of the contract, when boiled down to its last analysis, means

that the Gas Company is required to bring natural gas to the city within six months but is not required to furnish it longer than it is reasonably possible so to do. What does this mean? Does it mean that a Gas Company, which has the exclusive privilege of piping gas through the streets of the city and of furnishing and selling it to the inhabitants thereof, is not required to furnish or sell natural gas unless it is reasonably possible so to do, and yet is required at all events to bring that kind of gas to the city under penalty of $5000 for failure to do so? This would indeed be a very strange paradoxical sort of contract even if its language were so explicit as to admit of no other interpretation or construction. But when the surrounding circumstances, the nature of the contract, the situation of the parties and the object to be accomplished are considered, it is clear that no such contract was intended.

The contract merely requires the appellant to furnish artificial *or* natural gas during the twenty years. It is not required to furnish both. Of the two, artificial gas must be supplied as long as that kind of gas is generally used in the city, but natural gas is to be furnished only so long as it is reasonably possible so to do. There is no provision requiring the furnishing of natural gas at all events. It would seem from the language of the contract, as well as from the known situation of all the parties at the time and the circumstances surrounding them, that there was no thought of natural gas being guaranteed but on the contrary the contingency of its not being obtained, or, if obtained, that it might fail or prove insufficient, was clearly within the minds of the parties. And being so in mind, the clause which made the furnishing of natural gas contingent upon its being reasonably possible to furnish it was inserted to safeguard appellant's rights. Consequently, the rule that where a contracting party undertakes to do something which he afterwards finds to be impossible, he nevertheless must suffer the conse-

quences of the violation of his contract, has no application. Both parties knew the getting of natural gas was problematical. It would have been foolish and futile to require the gas company to bring natural gas at all events to the city limits under a penalty of a $5000 forfeit if it failed, and at the same time exempt it from the duty of furnishing such gas if it was not reasonably possible to do so, especially when the company was the only authorized vendor of gas in the city. The city would obtain no benefit from such a provision and the appellant would be most foolish to enter into such an agreement. It cannot be said that the parties intended such a contract especially when the uncertain nature of the venture is considered.

The evidence of appellant shows that it was never at any time reasonably possible to get natural gas to Independence, although various efforts were made to get it. The Stanley gas well owners drilled more wells in the hope of getting a sufficient supply but got none. The Stanley field proved to be merely a limited pool, not sufficient at any time to supply the amount required. Then appellant leased lands adjacent thereto and drilled wells, expending in this work about $2500 but these wells were all dry. Appellant then hired an expert who went over all the fields within available distances but found no gas. Then appellant tried to get gas from the Kansas Natural Gas Company but the company has never been able to adequately supply Kansas City. And the cost of piping gas from the distant gas fields of Oklahoma or Southern Kansas would be from ten to fifteen thousand dollars a mile which rendered it absolutely impossible to get it in this way, without regard to the provision of the contract limiting the appellant to retail it at twenty-five cents a thousand cubic feet. It certainly was not reasonably possible to get it in this way. "Reasonably" means "in a reasonable manner; in consistency with reason; in a moderate degree; not fully; moderately; tolerably."

[Smith v. City of Brunswick, 61 Mo. App. 578.] There was no evidence offered to contradict the showing made by appellant on this feature, but if there had been, on a demurrer to the evidence we would have to give appellant's evidence the benefit of every intendment and inference which could be drawn from it.

Appellant's evidence also showed that it had spent much more than the sum required by section 15 of the ordinance as the first requisite to get back the $5000 deposit, and that his expenditure was of the character required by that section. This expenditure was not to be only for the purpose of supplying natural gas, but, even so, it was such as would allow the use of natural gas as well as artificial, and was to be expended "within the corporate limits of the city of Independence." It is true section 15 also contains as a second requisite to the repayment of said deposit the provision that the grantee shall have complied with the provisions of section 12, but this cannot be construed as adding a new and additional burden upon appellant but must be understood as meaning that the grantee shall have complied with the obligations imposed therein. If any of those obligations were not to be performed because not reasonably possible of performance, then such were not required in order to obtain the return of the money. To put any other construction on this clause of section 15 is to consider it alone and as supremely controling, when our duty is to consider all parts of a contract and make them harmonize if possible. [State ex rel. v. Burkhead, 187 Mo. 14, l. c. 35.] But in considering all parts of the contract and harmonizing them, the construction placed thereon must be a reasonable and natural construction, one that the parties would, as reasonable and intelligent men, be likely to make, and not a useless or whimsical contract resulting in no good to either party yet placing one of them under a heavy penalty for failure to perform such useless condition. It would seem that to adopt respondent's con-

struction of the contract will not only not harmonize all parts of the contract, but will necessarily lead to the conclusion that the parties made not only a futile and paradoxical contract but one that is very unlikely to have been the intention under all the circumstances.

Under the view most favorable to the city it is certain that if natural gas had been brought to the city and furnished for only a short period and it then became impossible to furnish it longer, the appellant would be entitled to the return of its deposit. So that the failure to furnish it for a short period, say a day, a week or a month, is the only ground upon which the city can claim the forfeit. But it is far less reasonably possible to furnish it for a short period than for a long one, since it would require a large initial outlay with no chance for an adequate return. If now, it at once became manifest that it was impossible to furnish natural gas for any period however short, then the obligation to obtain natural gas ceased under a contract which required it to be furnished only in the event it was reasonably possible.

Under the above construction of the contract the deposit can only be considered in the light of a penalty or forfeiture and not as liquidated damages. In deed, it is not seen how it could be considered as anything other than a forfeiture under any construction of the contract. It is true the contract says it is liquidated damages, but this does not prevent the courts from looking at the real facts in the matter and determining whether it is one or the other. [May v. Crawford, 142 Mo. 390.] In this case no damage has been sustained by the city for failure to bring natural gas to the city limits. The city hasn't natural gas it is true, but it did not have when the contract was made, nor has it been deprived of natural gas by reason of the contract and appellant's failure to obtain it. The city apparently had a chance or hope of getting it which afterwards turned out to be groundless through no fault of

appellant. Liquidated damages can be recovered only when there is more than nominal damages to the other party. [Werner v. Finley, 144 Mo. App. 554.] The deposit, therefor, can only be considered as a forfeitures. And forfeitures are not looked upon with favor, but contracts providing therefor will be strictly construed in determining whether or not a forfeiture will be declared. [Albers v. Merchants Exchange, 140 Mo. App. 446; Tetley v. McElmurry, 201 Mo. 382; King v. Hartford etc. Ins. Co., 133 Mo. App. 612.] Certainly a forfeiture will not be declared as a matter of law when such declaration must rest upon a construction which would make the contract strange, paradoxical, and futile, when there is a reasonable construction disclosed by the contract, the nature of its subject-matter, and the circumstances surrounding the parties at the time of the creation of the contract.

It is urged that the proof does not show that the city has spent the $5000 or converted it to its own use. Appellant does not have to prove this. It is seeking the return of the amount of its deposit. The city is refusing to return it. If appellant is entitled to its return that right is not affected by the question whether the city has or has not spent the money.

There is no merit in the contention that appellant by waiting four and one-half years before suing has thereby construed the contract according to the city's contention. Appellant has the right to sue at any time before the Statute of Limitation has run. During the time that did elapse appellant did nothing to estop it from claiming the deposit. In fact it took steps to protect that right.

The books of the company were clearly admissible to show the expenditures made by it under section 15 and the purposes for which they were made.

The fact that the company ceased to make efforts to get natural gas after it became manifest that it was impossible to do so, makes no difference unless per-

haps it could be clearly shown that it would have been reasonably possible to get natural gas had such efforts been continued.

The appellant had a right to go to the jury upon the question whether it was reasonably possible to get natural gas and whether it has complied with any other conditions entitling it to recover its deposit. The judgment is reversed and the cause remanded for a new trial. The other judges concur.