BY THE

ST. LOUIS KANSAS CITY AND SPRINGFIELD

# Courts of Appeals

AT THE

## MARCH TERM, 1918.

---

## CHRISTOPHER & SIMPSON ARCHITECTURAL IRON & FOUNDRY COMPANY, Appellant v. E. A. STEININGER CONSTRUCTION COMPANY, and, MOUND CITY ICE & COLD STORAGE COMPANY, Respondents.

St. Louis Court of Appeals. Opinion Filed July 12, 1918.

1. **APPELLATE PRACTICE: Review: Reference: Conclusiveness of Referee's Findings.** In a suit at law, involving a long account, such as to make the case one for compulsory reference, the findings of the referee, approved by the court, have the force and effect of a special verdict of a jury, and are binding on appeal if supported by substantial evidence.

2. ———: ———: ———: ———. In such case, the appellate court will not review the evidence to determine its weight, but may review it to determine whether or not there is substantial evidence to support the findings of fact.

3. **MECHANIC'S LIENS: Lien Claims: Time Indebtedness Accrued: Time in Which to File Lien Claims.** Where a subcontractor furnished material and performed labor continuously between August 10, 1906, and October 22, 1906, and the work was not substantially completed until October 22, 1906, and on November 14, 1906, did certain work which was not voluntary for the purpose of extending the lien period, but was required to be done by the architects of defendant owner in order that the work might be com-

pleted as required by the several contracts, the demand accrued on November 14, 1906, and the lien claim filed on February 21, 1907, was seasonably filed.

4. ———: Contents of Lien Account: Accuracy. The fact that the lien account proper, contained in the lien paper, consists merely of specified items of material, etc., each item being preceded by a date and followed by a specified price, does not make the account insufficient on its face, where the account in the lien paper bears a heading stating that the account is for materials furnished and work and labor done in the erection of the building, and preliminary to the account it is stated in the lien paper that the lienor, with a view to avail itself of the benefit of the statute relating to mechanics' liens, files the account set forth, for work and labor done and materials furnished, it being evident that the prices charged for the various items were intended to include not only the reasonable value of the materials furnished, but the reasonable value of the work and labor performed in installing in the building the items mentioned in the lien paper.

5. ———: ———: Lien Claim: Construction. In determining sufficiency of the lien paper filed, the paper is to be considered as a whole.

6. TRIAL PRACTICE: Trial Before Referee: Necessity of Objection: Exception to Referee's Report Comes Too Late. Where no objection was made to the lien account on the trial before a referee, and no point made of the matter whatsoever, the attempt to challenge the account on this ground by an exception to referee's report, came too late.

7. MECHANICS' LIENS: Lien Account: Credits. A subcontractor's lien account was not insufficient because of failure to credit the contractor with unliquidated demands one of which was unknown to the subcontractor and the other was a matter in dispute between the parties.

8. CONTRACTS: Building Contracts: Construction: Working Days. Where a building contractor agreed to complete the work within fifty-five working days from the date of the contract, the term "working days" excludes not only Sundays and holidays, but also days upon which no work could be done because of weather conditions, but includes Saturday as a working day, in the absence of anything in the contract to indicate a contrary intention, although owing to labor rules work was suspended on Saturday afternoons.

9. ———: ———: ———: Meaning of Words. Words used in contracts are to be construed with reference to the nature of the contract in which they are employed.

10. **DAMAGES: Measure of Damages: Building Contract: Delay in Performance: Speculative Profits.** Where a subcontractor failed to complete an ice storage house within the contracted time, the owner cannot recover as damages, profits which he claims that he might have made in the proposed business of storing apples, such prospective profits being too speculative and conjectural, and too remote to form the basis for assessing damages entailed by a breach of such contract.

11. ————: ————: ————: ————: **Rental Value as Basis of Damages.** Where a subcontractor failed to complete a building within the contract time, the rental value of the building affords a proper basis for assessing the damages presumably suffered by the owner by reason of the contractor's delay.

12. ————: **Building Contract: Stipulated Damages Disproportionate to Actual Damages: Penalty.** Where a building contract provided for liquidated damages of $100 per day for delay in the completion of two sections of the building within the contract time, and the value of the entire building was only $60,000 to $65,000, and the rental value $6500 per year, the stipulated damages being wholly disproportionate to the damages actually suffered, or to any loss sustained by the owner which may be ascertained with any degree of certainty, the sum stipulated is a penalty for the non-performance of the contract and not liquadated damages, though the contract undertakes to declare such sum to be liquidated' damages.

13. **MECHANICS' LIENS: Interest: Allowable from Date of Demand.** In a subcontractor's action to have a claim made a lien, interest is allowable on such claim, and upon the contractor's counterclaim thereto, from the date upon which the parties demanded payment of their respective claims.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Wilson A. Taylor,* Judge.

Reversed and remanded (*with directions*).

*Henry T. Ferriss* for appellant Christopher & Simpson Architectual Iron & Foundry Company.

(1) The provision in the general contract for payment of $100 for each day's delay in finishing the various sections of the building must be construed as a penalty and not as liquidated damages, because: (a) In view of the character and cost of the building the $100 per day for each section is an unreasonable

and extortionate sum and cannot be treated as a fair measure of actual damages. (b) The damages for delay* in completing a building are ascertainable according to well-recognized legal rules and consist of the loss of rental value during the period of delay. (c) The sixteen days delay in this case did not cause the owner any actual loss, as his failure to use the building in the fall of 1906 was due to his own lack of refrigeration facilities. Basye v. Ambrose, 28 Mo. 39; Cochrane v. Peoples Ry., 113 Mo. 359; Thompson v. St. Charles County, 227 Mo. 235; Buchanan v. Exposition Co., 245 Mo. 349; Connelly v. Priest, 72 Mo. App. 673-678; Ramlose v. Dolman, 100 Mo. App. 366; Ward v. Haren, 183 Mo. App. 569; Power Co. v. Independence, 188 Mo. App. 167-8; Muehlbach v. Railroad., 166 Mo. App. 314; 19 Am. & Eng. Encyc., p. 411; Hathaway v. Lynn (Wis.), 6 L. R. A. 553; Consumers Ice Co. v. Jenkins, 58 Ill. App. 519.

*Lyon & Swarts* and *T. J. Hoolan* for appellant and respondent Mound City Ice & Cold Storage Company.

(1) The plaintiff has no lien for the reasons: (a) It was not filed within four months. R. S. of Missouri, sec. 8217. (b) The lien account shows only the delivery of material at specified dates at itemized values; whereas the evidence shows that labor entered largely into the account; and that the material was furnished and the work done under a contract lump price, which was arbitrarily apportioned in the lien account among the items of material delivered on the dates specified. Crane Co. v. Smith, 187 Mo. App. 261; Mining Co. v. Coyne, 164 Mo. App. 492; Baker v. Smalworth, 161 Mo. App. 261; Press Brick Co. v. Construction Co., 177 Mo. App. 581; Grace v. Nesbit, 109 Mo. 19; Rude v. Mitchell, 97 Mo. 373-4. The points were properly and aptly saved by a specific

exception to the Referee's report. Berry v. Rood, 209 Mo. 673. Tutt v. Latshaw, 172 Mo. 372. (c) The lien account failed to give just credits, in that the amount deducted for the delay caused by the material man, should, under the terms of his contract, have been credited and deducted. Uthoff v. Gerhard, 42 Mo. App. 259; Lumber Co. v. Stoddard, 113 Mo. App. 317. (2) The sub-contract is related to the general contract. Indeed the sub-contract is not only made a part of the general contract, but it, in terms, permits the general contractor to deduct, from payments under the sub-contract, such loss to the general contractor, as under his contract, may have been due to the delay of the sub-contractor in the performance of his work. The clear intention of the parties was to assess damages for its breach. Those damages in their nature being uncertain and incapable of exact calculation, will be considered as liquidated. Jennings v. Todd, 118 Mo. 296; Walter v. Huggins, 164 Mo. App. 69; Keeth v. Ridge, 146 Mo. 97; Eyerman v. Cemetery Assn., 61 Mo. 491; 27 Cyc., Mechanic's Liens, p. 88; Buchanan v. Exposition Co., 245 Mo. 337; Thompson v. St. Charles Cy., 227 Mo. 240; Werner v. Finley, 144 Mo. App. 560-1; Wallis Iron Works v. Parks Assn., 19 L. R. A. 459; 13 Cyc., pp. 98-99; Hudson on Buildings, section 64; Sun Printing Assn. v. Moore, 183 U. S. 643; United States v. Bethlehem Steel Co., 205 U. S. 105; Morse v. Rathburn, 42 Mo. 603; Lime & Cement Co. v. Bank, 158 Mo. 282; St. Louis I. M. & S. v. Stone Co., 90 Mo. App. 171; Wells v. Forester, 140 Mo. App. 328. (3) Interest is not recoverable in a suit on a *quantum meruit* until the amount of the debt is ascertained. Dozier v. Terman, 30 Mo. 221; Dempsey v. Schawalker, 140 Mo. 690-1; McCormack v. Lynch, 69 Mo. App. 529-30; Laming v. Peters Shoe Co., 71 Mo. App. 652; Shipman v. State, 44 Wis. 458-62; State v. Warner, 55 Wis. 272; Needham v. Wellesley, 139 Mass. 372; Thorndike v. Wells Assn., 146 Mass. 619; Kelsy v. Murphy, 30 Pa. St. 340.

*Henry T. Ferriss* for respondent, Christopher & Simpson A. I. & Fdy. Co.

(1) (a) The lien was filed in time. (b) The lien account is "a just and true" account within the meaning of the statute. (1) This point was not made before the referee and hence was waived. (2) There was no abitrary apportionment of the contract price. (3) The account and the petition are based on *quantum meruit,* not on a contract. (4) It was a harmless defect at worst. St. Louis v. Railroad, 248 Mo. 10, 25; Bradley Heating Co. v. Sayman, 201 S. W. 864; Milter v. Whitelaw, 28 Mo. App. 639; Deardorf v. Everhart, 74 Mo. 37; Hydraulic P. B. Co. v. McTaggart, 76 Mo. App. 353; Lumber Co. v. Pottinger, 165 Mo. App. 450; Banner Lumber Co. v. Rolson, 182 Mo. App. 611; Sec. 8223, R. S. 1909. (c) The lien account did not fail to give just credits. Authorities, supra. (2) The question of delay and of liquidated damages arose in this case by virtue of the counterclaim filed by Steininger Construction Company, appellant's co-defendant. Appellant's answer was in effect simply a general denial. The Construction Company has not appealed and appellant cannot appeal upon questions not raised by its pleading. Hence, it cannot complain that the counterclaim was not allowed in a large enough amount. Ocumpaugh v. Norton, 24 D. C. App. 296, 68 L. R. A. 272. (3) Interest was properly allowed. Williams v. Railroad, 153 Mo. 548; Trimble v. Railroad, 180 Mo. 587.

ALLEN, J.—This is an action, instituted May 15, 1907, by a sub-contractor, Christopher & Simpson Architectural Iron & Foundry Company, against the general contractor, E. A. Steininger Construction Company, and the owner, Mound City Ice & Cold Storage Company, for a balance alleged to be due plaintiff from the defendant contractor for the reasonable value of labor and materials furnished in the erection of a certain building, and for a lien therefor

against the property. The parties to the record are all corporations. The issues arise upon the petition, the first amended answer of the defendant owner, the third amended answer and counterclaims of the defendant general contractor, and a reply including answers to the counterclaims.

The petition avers, in substance, that on or about July 26, 1906, defendant E. A. Steininger Construction Company (hereinafter termed the contractor) entered into a contract with its co-defendant, the Mound City Ice & Cold Storage Company (hereinafter referred to as the owner), wherein the contractor agreed to erect an "ice storage house" for its co-defendants on certain described property owned by the latter in the city of St. Louis; that thereafter, at the request of the contractor, plaintiff furnished the materials and performed the work and labor in installing the iron and steel work required in the erection of such building, as described in a "bill of particulars," aggregating $8646.48. It is averred that the deliveries of the material were completed on October 8, 1906, and the installation thereof completed on October 22, 1906, excepting certain work done upon a door, required to be done under the contract, which was completed on November 14, 1906; that said work and labor were reasonably worth the prices charged therefore and actually entered into the building, and that the claim accrued and became due November 14, 1906. It is further averred, among other things, that on February 11, 1907, plaintiff gave the defendant owner written notice of its claim and its intention to file a lien therefor, and that the lien account sued upon was filed on February 21, 1907. Giving credit for certain payments made plaintiff by the defendant contractor, on account, one of which is alleged to have been made after the filing of the lien account, viz., on March 15, 1907, and alleging that on the last mentioned date demand was made for the payment of the balance due; to-wit, $3047.68, and judgment is prayed against the defendant contractor for such sum, with interest from

March 15, 1907, and that the same be declared a lien against the property.

The amended answer of the defendant owner admits that on July 25, 1906, it entered into a contract with its co-defendant whereby the latter agreed to erect the building in question, and that "contemporaneously with the making of said contract" the defendant contractor entered into a contract with plaintiff whereby plaintiff agreed to install the iron and steel work required in the erection thereof, in the manner and within the time required by the contract between the defendants, and as shown by the plans and specifications of the architect. Then follows a general denial of all the allegations of the petition not specifically admitted.

The third amended answer of the defendant contractor admits that on or about July 26, 1906, this defendant entered into a contract with its co-defendant herein, by which this defendant agreed to erect the ice storage house mentioned. It is then averred that by said contract this defendant bound itself to have two "sections" of said ice storage house under roof and in such condition that the owner might install the refrigerating piping and do the insulation within fifty (which should be "fifty-five") working days from the date of the contract, and agreed to have the remainder of the building under roof and ready for like purposes within sixty-five working days from the date of the contract, and to have the entire building completed in all details within eighty working days from the date of the contract; and that this defendant agreed that if it failed to complete the building "to the various stages" mentioned it would pay its co-defendant, as liquidated damages, $100 per day for each day beyond the time set for such completion.

And by its answer this defendant "further admits and states" that on July 26, 1906, it entered into a written contract with plaintiff, whereby the latter agreed to furnish and install the iron and steel work required in the erection and completion of the ice

storage house, and to complete and "have set in position" all of the same within fifty days from July 26, 1906; and that plaintiff agreed that its said agreement and undertaking should be and become a part and parcel of the contract between this defendant, as general contractor, and its co-defendant as owner. And it is averred that plaintiff agreed to commence at once upon the work to be done by it under its contract, and to complete the same in such time as to cause no delays to this defendant, the general contractor, or any other sub-contractor on the building; and agreed that any damage or liability for which this defendant, as general contractor, should "be held or become liable for in consequence of the neglect" of plaintiff to install and complete the work to be performed by it within fifty days from the date of its contract should be deducted from the contract price of $8600 which plaintiff was to receive for performing and completing its contract. And this defendant denies "that the plaintiff performed its said contract, or did all the work, or furnished all the materials set out in the petition, or did said work or furnished said materials at the time or date set out in the petition," and denies each and every allegation of the petition not specifically admitted.

Further answering, this defendant states that plaintiff is not entitled to recover for the work, labor and materials sued for in this action, for the reason that plaintiff breached its contract by failing to complete its work within the time limited therein, and because by the terms of its contract any loss or damage resulting to this defendant from such delay is to be deducted from the amount to which plaintiff would otherwise be entitled. It is averred that work which this defendant was required to do in order to complete the building could not be done until the iron and steel work was installed; and that although the building was ready to receive plaintiff's work, and plaintiff was notified thereof, plaintiff did not commence its work thereupon until forty-five days after July 26,

1906, and did not install the iron and steel work in time to enable this defendant to complete the building in its various stages within the time limit fixed by its contract with its co-defendant; that although this defendant repeatedly notified and urged plaintiff to observe the terms of its contract in this respect, plaintiff failed "for more than forty-five calendar days, or more than thirty working days after the expiration of the fifty days from July 26, 1906," to install and complete the iron and steel work on the building, whereby plaintiff became liable to pay the damages thereby sustained by this defendant, as stipulated and fixed in the contract between the latter and the owner. And it is averred that, solely because of the delay thus caused by plaintiff, this defendant was unable to complete and deliver the building in its various stages within the time limit fixed by its contract with the owner, and that because of such delay defendant owner has witheld from this defendant and now retains the sum of $3000, which, but for such delay, would be due this defendant under its contract with the owner; and that by reason of the said breach by plaintiff of its contract, this defendant has sustained loss and damage to the amount of $3000.

It is averred that by reason of plaintiff's breach of its contract no amount or sum of money whatever is due plaintiff on its cause of action "until and unless the amount or damage, . . . to which this defendant is entitled, has been ascertained and deducted from the amount to which plaintiff would be entitled had it preformed and completed its contract" And it is further averred that the account set out in the petition, and on which plaintiff claims a mechanic's lien, does not give credit for the deduction to which this defendant is entitled and is therefore not a just and true account of plaintiff's alleged claim.

This defendant then sets up a counterclaim for the loss and damage alleged to have been sustained by it by reason of plaintiff's alleged breach of its con-

tract, mentioned above, praying judgment thereon for the sum of $3000 and interest.

This defendant likewise set up two further counterclaims, one for $47.60 for labor and material alleged to have been furnished upon the building by this defendant, which it was plaintiff's duty to furnish, and the other a so-called "equitable counterclaim." These two counterclaims were disallowed below; and since they are not involved in the appeals pending hereinbefore us they need not be further noticed.

Plaintiff filed a reply to the third amended answer of the defendant contractor, denying generally the allegations thereof and averring that the damages claimed by said defendant "in its claim for recoupment" set out in the answer, for the alleged failure of plaintiff to complete its work in the time limited in its contract, being at the rate of $100 per day, are greatly disproportionate to the actual damages which said defendant could have sustained by reason of the alleged delay and to "any probable or presumed damage which could have resulted therefrom; and that the amount agreed to be paid by said defendant in its contract with the owner, because of any such delay, was in fact intended as a penalty in the nature of a security for the performance of defendant's contract, and is to be so regarded. And plaintiff prays that the agreement upon which said claim for liquidated damages is based be held and construed as a penalty and not as an enforcible agreement for liquidated damages.

With this reply plaintiff filed answers to the counterclaims mentioned above. The answer to the first counterclaim of defendant contractor is a further plea to the effect that the contract between the defendants, pleaded by this defendant as a basis of its counterclaim, should be held and construed as a penalty to compel the performance of the contract, and not as an enforcible agreement for liquidated damages. And plaintiff prays to be discharged from the counterclaim with its costs.

The respective answers, to the other counterclaims need not be noticed.

By consent of the parties the cause was referred to Clifford B. Allen, Esq., to try all of the issues and report his findings and recommendations to the court. In due time the referee filed his report, finding that plaintiff was entitled to recover on its cause of action against the defendant contractor in the sum of $3047.68, with interest thereon from March 15, 1907, amounting in all to $4441.99; that the defendant contractor should be allowed on its first counterclaim the sum of $1600, (allowing $100 per day for sixteen days delay found to have been caused to the contractor by plaintiff's delay) with interest thereon from March 15, 1907, amounting in all to $2332. And it was recommended that judgment be entered in favor of plaintiff against the defendant contractor for the difference between $4441.99, to-wit, the sum of $2109.99, and that a lien therefore be impressed upon the said property of the defendant owner.

Both plaintiff and the defendant owner filed exceptions to the referee's report. The defendant contractor filed none. The court overruled all of the exceptions of both of said exceptors and entered judgment in accordance with the recommendation of the referee. From this judgment both plaintiff and the defendant owner, Mound City Ice & Cold Storage Company, have duly appealed to this court. These appeals, having been docketed and heard together, will be disposed of in this opinion.

It is unnecessary to here set out at length the findings of fact made by the referee. We shall make reference to such portions thereof as may appear to be necessary in the course of the opinion in disposing of the questions involved in the appeal.

## I.

At the outset, and as preliminary to a discussion of the various questions presented, it may be well to say that as the suit is one at law involving a long

account, such as to make the case one for compulsory reference, the findings of the referee, approved by the court, have the force and effect of a special verdict of a jury, and are binding on appeal if supported by substantial evidence. In other words, in a case of this character, the appellate court will not review the evidence to determine its weight, but may review it to determine whether or not there is substantial evidence to support the findings of fact. Such is the rule of decision announced by the Supreme Court, in Banc, in St. Louis v. Parker-Washington Co., 271 Mo. l. c. 241, 196 S. W. 767. In Johnston v. Star Bucket Pump Co., 202 S. W. 1143, which was likewise before the court in Banc, this question is fully discussed in the opinions filed therein. The majority opinion follows the doctrine of the Parker-Washington case, supra, but lacks the concurrence of a majority of the members of the court on this point, one of the judges (necessary to a majority) concurring in the result only. The effect of this case is to leave the law of this State, on this question, that promulgated in the majority opinion in the Parker-Washington case, supra. [See also: Roloson v. Riggs et al., 203 S. W. 973.]

## II.

The defendant owner, on its appeal, contends that plaintiff is not entitled to a lien for the reason that it appears that the lien account, filed February 21, 1907, was not filed within four months from the time of the accrual of plaintiff's demand. But this contention is obviously without merit. In the lien paper it is stated that "the work and labor done in erecting and putting said material in place in said building was done continuously from August 10, 1906, up to and including October 22, 1906, excepting work about one of the doors about said building required to be done under said contract, which last named work was done on the fourteenth day of November, A. D. 1906, so that the above account accrued on the fourteenth day of November, A. D. 1906." The proof shows

and the referee found that plaintiff furnished the iron and steel work on the building continuously between August 10, and October 22, 1906; and that the labor shown to have been performed by plaintiff on November 14, 1906, was not voluntary, for the purpose of extending the lien period, but was required to be done by the architects of the defendant owner in order that the work contracted to be done by plaintiff might be delivered to the owner in good working order, as required by its contract as well as by the contract of the defendant contractor. The referee therefore concluded, as a matter of law, that plaintiff's demand accrued on November 14, 1906, (citing: Darlington Lbr. Co. v. Smith Bldg. Co., 134 Mo. App. 316, 114 S. W. 77; General Fire Extinguisher Co. v. Schwartz, 165 Mo. 171, 65 S. W. 318, and other cases); stating further that since it had been found that the work was not substantially completed until October 22, 1906, the lien was filed within four months from that date.

Manifestly the lien was seasonably filed.

## III.

The defendant owner also contends that the lien account is insufficient on its face, and is not a just and true account, for the reason that it "shows only the delivery of material at specified dates, at itemized values," whereas the evidence shows that labor entered largely into the account; and furthermore that "the material was furnished and the work done under a contract lump price, which was arbitrarily apportioned in the lien account among the items of material delivered on the dates specified."

It is true that the account proper, contained in the lien paper, consists merely of specified items of iron and steel work, such as beams, trusses, girders, etc., each item being preceded by a date and followed by a specified price. But this account, in the lien paper, bears a heading stating that the account is "for iron and steel materials furnished and work and labor done in the erection of said building." And preliminary to

the account it is stated in the lien paper that the lienor, with a view to avail itself of the benefit of the statute relating to mechanic's liens, files the account set forth, "for the work and labor done and materials furnished by it" under contract with the defendant contractor. The evidence shows that the prices included in the account represent the reasonable value of the materials and labor involved in furnishing and installing each item. The lien paper filed is to be considered as a whole (Wilson-Reheis-Rolfes Lbr. Co. v. Ware, 158 Mo. App. 179, l. c. 184, 138 S. W. 690; Wilson-Reheis-Rolfes Lbr. Co. v. Capron, 145 Mo. App. 497, 122 S. W. 1085; Banner Lbr. Co. v. Robson, 182 Mo. App. 611, 168 S. W. 244); and so considering that filed by plaintiff, we are of the opinion that it is sufficient to support a lien for plaintiff's demand. Evidently the prices charged for the various items were intended to include not only the reasonable value of the material furnished but the reasonable value of the work and labor mentioned in the lien paper, i. e. the work and labor performed in installing in the building the items mentioned; and this accords with the evidence in the case.

It is also true that the materials were furnished and the work done under a contract price of $8600—for the whole—with the exception of three items of "extras," aggregating $46.48, shown, to have been furnished at the contractor's request, which increased plaintiff's claim to $8646.48. Plaintiff, however, in filing its lien account, has apportioned the entire contract price among the various items of the account other than the three items of "extras;" the prices charged for the items embraced within the original contract aggregating $8600, the contract price for the whole. It is earnestly contended by the defendant owner that such "arbitrary apportionment" of the entire contract price among the specific items of the account renders the account not a just and true one, and that on this account the lien must fail. This argument appears to find support in language used in

Grace v. Nesbitt, 109 Mo. l. c. 19, 18 S. W. 1118, and in National Press Brick Co. v. Construction Co., 177 Mo. App. 573, l. c. 581, 160 S. W. 1027. But an examination of these cases will reveal that such language was, in each instance, *obiter dicta*. The referee notices this question—though the point was not made before him—stating, in his conclusions of law, as follows: "Had the defendants objected to the introduction in evidence of the lien account on the ground that it was not true because the contract lump price for the labor and materials as a whole had been arbitrarily apportioned to the various articles named a more serious question would have been presented. . . . Not having specified this ground, this defect, if any, was waived." And authorities are cited in support of this ruling. The defendant owner excepted to the referee's report on this ground, and contends that the point was thereby saved for review here. Plaintiff, on the other hand, insists that objection to the lien account on this ground has been waived.

It is by no means clear that the account should be held to be insufficient to support the lien on the ground mentioned. No case has been called to our attention wherein the lien account has been rejected on the ground that it was not just and true because of the fact that it set out itemized prices, whereas the contract price was a lump sum. Here all of the labor and materials called for by the contract are included within the account filed, and the total of the itemized prices—excluding the three items of extras—is precisely the amount of the contract price. By this account the owner is merely furnished more information regarding plaintiff's demand than would appear in an account which merely stated a lump price for the whole. We are not prepared to say that under such circumstances the lien account should be held to be not a just and true account. However, we regard it as clear that since no such objection was made to the account on the trial before the referee, and no point made of the matter whatsoever, the attempt to chal-

lenge the account on this ground, by an exception to the referee's report, came too late. [See Hill v. Bailey, 8 Mo. App. 85.]

It is argued for the defendant owner that the question is properly raised by excepting to the referee's conclusion that the lien account was sufficient in law. But in reaching this general conclusion the referee merely passed upon the objections leveled at the lien paper. He was not required to do more. And the trial court, in considering the exceptions to the report, was not required to pass upon questions which the parties had waived by failing to timely raise them before the referee. In the state of the record before us, it cannot be said that this question has been passed upon below, or presented for adjudication, since the refree held that "this defect, if any," had been waived, and the trial court simply sustained the report, overruling all of the exceptions thereto. We think that the owner should not be heard to urge the point on appeal.

It is further contended that the lien account is not just and true for the reason that it failed to give credit for the amounts claimed by defendant contractor in its first and second counterclaim. There is no merit in this contention. It appears that plaintiff did not know of the existence of the unliquidated demand of the defendant contract or for $47.68, the basis of the second counterclaim, when the lien account was filed. And indeed the defendant contractor failed to establish such demand. The $3000 claimed in defendant contractor's first counterclaim was an unliquidated claim for damages which was a matter in dispute between the parties. The referee found that there was no fraudulent or intentional failure to give proper credits, and quite properly held that the lien account was not subject to attack on this ground. [See Wilson-Reheis-Rolfes Lbr. Co. v. Watson, supra; Hydraulic Press Brick Co. v. McTaggart, 76 Mo. App. 347.]

We consequently rule against the appellant owner the points raised here regarding the sufficiency of the lien account.

## IV.

The evidence fully establishes the account sued upon and for which a lien is sought, showing that the labor and material in question were furnished upon the building and that the prices charged were the reasonable value of the various items thereof. Plaintiff was therefore entitled to a judgment against the contractor, and to a lien against the property of the appellant owner, for the balance claimed to be due it, less the amount, if any, properly allowable on the first counterclaim of the defendant contractor, as the referee held.

## V.

As to the amount properly allowable on the first counterclaim two questions are here involved, viz: (1) The extent of the delay caused the defendant contractor, under its contract, by reason of plaintiff's failure to perform its contract in the time therein limited; (2) Whether the stipulation in the contract between the contractor and the owner providing that the former shall pay $100 per day for each day's delay in completing the building to the various stages mentioned, in the time therein limited, should be held to be a penalty or liquidated damages. Of these in their order:

The building consisted of compartments or sections, so designed as to be separately used for ice storage or cold storage purposes. Plaintiff's contract required that plaintiff install all of the iron and steel work of the building within fifty days from July 26, 1906; making plaintiff liable to a deduction from the contract price for any "damage or liability" for which the contractor might be "held" under its contract with the owner, by reason of any delay on plain-

tiffs part in the performance of its contract. The
period of fifty days mentioned in plaintiff's contract,
being fifty calendar days, expired September 14, 1906,
as the referee found; whereas plaintiff did not com-
plete its work upon the first two "sections" of the
building until October 17, 1906, and did not sub-
stantially complete all of its work until October 22,
1906. There is no dispute as to plaintiff's delay.
The question is: To what extent was the contractor
delayed in the performance of its contract by reason
of plaintiff's delay?

The contract between the owner and the contractor
provides, in part, as follows:

"The contractor agrees to proceed with the works
comprised under this contract immediately and binds
itself and guarantees to have completed two sections
of the ice storage house, that is, under roof, and in
such condition that the owner may install the refrigera-
tion piping and do the insulation, which works are not
comprised under this contract within a period of fifty-
five working days beyond the date of this contract; it
further agrees to have the entire remainder of the build-
ing under roof and ready for like purposes for the benefit
of the owner within a period of sixty-five working
days from the date of this contract; and it further
binds itself and guarantees to have the entire build-
ing complete in every detail within eighty days from
the date of this contract."

We are not concerned with the period of eighty
days mentioned in this contract, since the completion
of the entire building, in all of its details, in such
time, was waived by the owner. Likewise, under the
facts found by the referee, the period of sixty-five
working days, supra, is not of consequence, since the
owner sustained no damage by the delay, except for
that in completing the first two sections of the build-
ing.

The contractor agreed to complete these two
sections in fifty-five *working days* from the date of its
contract, which was in fact entered into on July 25,

1906. It becomes important then to determine when this period of fifty-five working days after July 25, 1906, expired, within the meaning of this contract.

In computing the period of fifty-five working days from July 25, 1906, the referee excluded Sundays, holidays and rainy days, and also excluded half a day for each intervening Saturday. In the referee's conclusions of law Saturdays are referred to as "half days which by reason of labor rules were made holidays." By this method of computation the referee determined that the period of fifty-five working days expired October 10, 1906; while under the facts found by the referee this period would expire October 3, 1906, if Saturday by counted as a whole working day.

We regard it as clear that the term "working days," as used in the contract, should be taken as excluding not only Sunday and holidays but also days upon which work could not be done because of weather conditions. Had this not been the intention of the parties it may well be assumed that a definite date for the completion of the work would have been agreed upon. The only extinsic evidence in the record regarding the meaning of the term "working days" is the testimony of one Helfensteller, the architect of the building. In response to questions propounded to him by the referee he testified, without objection, to the effect that by "working days" was meant days upon which weather conditions were such as to permit work to be done, i. e., where the building was, as here, not under roof; but that Saturday is a working day—"a whole working day." Though the questions asked this witness were not so framed, it is evident that it was sought to elict from him, as an architect, testimony as to a usage and custom, among architects and builders, with respect to the construction of such words in a building contract. What effect may properly be given to this testimony we need not say. We refer to it as being the only testimony respecting the matter. And in any event it is in harmony with the view

which we take of the general contract. While, as said, we think that the parties must have intended that days upon which work could not be done because of weather conditions would be excluded in computing the period of fifty-five working days, we know of no good reason for assuming that they intended that Saturday be counted as half a working day within the meaning of the contract. Though it be that owing to "labor rules" work was suspended on Saturday afternoons, we are of the opinion that under a contract of this character Saturday is to be construed as a working day in the absence of anything to indicate a contrary intention. There is nothing in the contract, or in the conduct of the parties as shown by the evidence, lending support to the view that Saturday was to be counted as half of a working day in computing the period mentioned. And there is no evidence that by usage and custom in such business in the community the term "working day" is to be so construed.

The owner says that the term "working day" has a settled meaning, and that it includes all days except Sundays and legal holidays, citing: Pedersen v. Eugster, 14 Fed. 422; Lawson on Custom & Usage, p. 368. But we regard these authorities as without influence here. The words in question are to be here construed with reference to the nature of the contract in which they are employed; and we think that they must be taken to mean days upon which work could be done.

According to the referee's findings of fact, counting Saturday as a whole working day, the period of fifty-five days expired the night of October 3, 1906. And as the evidence shows that the referee found that the first two sections of the building were completed on October 26, 1906, the general contractor was twenty-three days late in completing these two sections. And under the facts found, such delay was caused by the delay of plaintiff in completing its work under its contract.

## VI.

We come then to the question of "penalty" or "liquidated damages," a question which has been the subject of much judicial discussion, and as to which the decisions of the courts have 'been by no means entirely harmonious. The general principles to be observed in such cases are stated in Thompson v. St. Charles County, 227 Mo. 220, 126 S. W. 1044, where many of the earlier cases in this State are cited. [See, also, Buchanan v. Exposition Co., 245 Mo. 337, 149 S. W. 26; Cochran v. People's Ry. Co., 113 Mo. 359, 21 S. W. 6; Power Company v. Independence, 188 Mo. App. 157, 175 S. W. 86; Ward v. Haren, 183 Mo. App. 569, 167 S. W. 1064.]

The defendant owner, over the objections of plaintiff, introduced evidence for the purpose of showing the loss of profits in the business for which, it is said, the owner intended to use the building in question, i. e., loss of profits in the business of storing apples for that season. In this connection it may be noted that both in plaintiff's contract and in the contract of the general contractor the building is referred to merely as an ice storage house. Plaintiff, it seems, had no notice that the building was intended to be used for the storage of apples, nor does it appear that the contractor had such notice. The president of the corporate owner testified to the intention to use the building for the purpose of storing apples that season; and it appears that the company had some correspondence with apple owners regarding the storing of apples in the building during the season. The referee's findings of fact regarding the damages sustained by the owner, are as follows:

"The storage season for barreled apples is from September 1st to May 1st. The movement of the local crop to the city runs from September 1st to November 1st. The height is reached between September 15th and October 15th. Contracts for the storage of barreled

apples are customarily made in July, August and September.

"After the sections of the warehouse were in condition for the Storage Company to install the insulation and refrigeration pipes, it would take about a week to equip each section therewith. The Storage Company only expected to pipe two sections for apple storage, and did not expect to have the first two sections ready for use prior to the middle of October, 1906. Although the 1906 apple crop was unusually large, the Storage Company made no contract during that season for storing apples in this warehouse, and no apples or other produce were stored therein in the year 1906. The first use to which these rooms were put was the storage of ice in 1907.

"The season price for storage of apples was forty cents a barrel, in lots of one thousand or more, and fifty cents for smaller lots. The average cost of such service was approximately fifteen to twenty cents a barrel.

"If the storage company could have filled the two compartments with apples after October 15, 1906, and received said storage prices therefor, and have given the service at said cost, it would probably have made a profit of from four to seven thousand dollars."

It will be seen that the referee does not in terms find that the owner suffered special damage by way of loss of profits. The finding is that "*if* the storage company could have filled the two compartments with apples after October 15, 1906, . . . it would probably have made a profit," etc. (Italics ours). And in the course of his conclusions the referee says: "And the failure to complete them (the first two sections) on time might result in a loss of business which might exceed the $3000 now claimed as liquidated damages." After a full discussion of the question, citing many authorities, the referee concludes that the provision of the contract in question is to be construed as one for liquidated damages and enforced accordingly. And the contractor was consequently allowed a recovery of $100

per day for the sixteen days delay found by the referee to have been caused by the failure of plaintiff to complete its work within the contract time.

Though it appears that the actual work of installing the refrigerating apparatus in each section would take only about a week, as the referee finds, and though the contractor completed the first two sections on October 26, the building was not used for any purpose until January, 1907. The referee finds that the movement of the local apple crop is from September 1 to November 1; making no finding as to apples coming from other sections. The evidence is that apples from the ''northwest'' arrive in St. Louis for storage from October 15 to the end of November or the first part of December. And we think that it cannot with any certainly be said that the failure to obtain apples for storage during a considerable portion of November, and perhaps a part of December, was due to plaintiff's delay in competing its work. But, however this may be, we are of the opinion that the estimate of profits which the owner, it is claimed, could have made in the proposed business of storing apples, was not the proper criterion for ascertaining damages suffered by the delay in completing the building. Such prospective profits, which might or might not have been realized had the building been completed within the contract time, are wholly speculative and conjectural, and too remote, we think, to form the basis for assessing the damages entailed by the breach of a contract of this character. [See Consumers Pure Ice Co. v. Jenkins, 58 Ills. App. 519, l. c. 524, 525; McConaghy v. Pemberton, 168 Pa. 121; Hutchinson Mfg. Co. v. Pinch, 91 Mich. 156; Novelty Iron Works v. Oatmeal Co., 88 Iowa 524; Abbott v. Gatch, 13 Md. 114]. It may, perhaps, be proper to consider profits which could probably have been made in arriving at the rental value of the building to the owner (Novelty Iron Works v. Oatmeal Co., supra), but as to this we decide nothing. The loss of profits in the business of storing apples are not such damages as would naturally arise from the breach of this contract, and

cannot be said to have been in the contemplation of the parties. [See Hadley v. Baxendale, 9 Exch. 341; Fitch v. Telegraph Co., 150 Mo. App. 149, l. c. 159, 130 S. W. 44; Tirry v. Hogan, 181 Mo. App. 48, 163 S. W. 873; Sedgwick on Damages (9th Ed). Sec. 144, et seq.]

The tesimony of an expert witness was adduced by plaintiff tending to show the rental value of the property as a whole, considering the building as a "specialty building." This witness, who had previously examined the property, valued the entire building and the land at from $60,000 to $65,000, and testified that in his opinion the reasonable annual rental value thereof, as a "specialty building," would be ten per cent of the value of the property, or, as he said, $6000 per year; stating that if it were an "ordinary business building" the rental value would not be so large. The referee found, as a matter of fact, that the "reasonable yearly rental value of a specialty building of this cost," at the time and place in question, was $6500. Under the circumstances we think that such rental value affords a proper basis for assessing the damages presumably suffered by the owner by reason of plaintiff's delay. [See Dangler v. Auer, 55 Mo. App. l. c. 553; Connelly v. Priest, 72 Mo. App. l. c. 678; Cochran v. People's Ry., supra. See, also, notes to Wells v. Nat'l Life Assn. in 53 L. R. A., p. 50, et seq., and cases there cited.] Doubtless the building possessed a peculiar value to the defendant owner, making the rental value thereof to the owner greater than its general rental value, or the value to an ordinary renter. [Cochran v. People's Ry., supra, l. c. 364, 365.] But the expert testimony, supra, undertakes to show the rental value of the building as one especially constructed for a specific use, and which should command a higher rental than would a building erected for general business purposes. And the owner did not, as did the defendant in the case last cited, undertake to show the rental value of the building to it,

as such, but sought only to show loss of prospective profits in its business.

In any event, under the evidence and the findings of fact of the referee touching the matter, we regard the stipulated damages as wholly disproportionate to the damages actually suffered, or to any loss sustained by the owner which may be ascertained with any degree of certainty. And we consequently feel impelled to declare the sum stipulated to be a penalty for the non-performance of the contract, and not liquidated damages, though the contract undertakes to declare such sum to be liquidated damages. Presumably the real object of a stipulation of this character is to secure the performance of the contract. The language of the agreement, and the intention of the parties as gathered therefrom, are, in the first instance, to be given due consideration; but in the final analysis the strict wording of the contract must, if need be, give way to the inexorable demands of justice. [See Basge v. Ambrose, 28 Mo. 39; Thompson' v. St. Charles Co., supra.] As said in Buchanan v. Exposition Co., supra, "the evidence of an intention to measure the damages is seldom satisfactory when the amount so stated varies materially from a just estimate of the actual loss sustained." [See, also, Ward v. Haren, supra; Menges v. Piano Co., 96 Mo. App. 1. c. 286, 70 S. W. 728.] In the instant case, as said in Cochran v. People's Ry., supra, "at the rate stipulated, the damages would have amounted in a year to a sum almost as large as the capital invested, or total cost of the building;" though here the delay involved is that in completing only two sections of the building. Under the provisions regarding delays in completing the building to other stages, the stipulated damages might, it seems, amount to $200 or $300 per day. We regard it as clear that the owner could not within reason, have suffered actual damages by reason of such delay in any way commensurate with the forfeiture provided therefor by the contract.

Among other authorities cited and relied upon by learned counsel for the defendant owner is the case of Thompson v. St. Charles County, supra. The language quoted by counsel therefrom we think has no application to the facts of this case. In the Thompson case the building in question was a court house, the contract price thereof being $37,349. The contract stipulated that the contractor pay $10 per day, as liquidated damages, for each day that he was in default. To hold such sum to be liquidated damages, under the circumstances of that case, furnishes, we think, no authority for the owner's contention under the facts of this case.

## VII.

Since we hold that the referee erred in his conclusions of law in regard to computing the period of fifty-five working days, supra, and hold that under a proper computation of such period the contractor's delay in completing the first two sections of the building amounted to twenty-three days, and since we further hold that the stipulation in the contract as to the owner's damages is to be regarded as a penalty, and not a provision for liquidated damages, and that the damages properly assessable under the circumstances are to be measured by the rental value as found by the referee under the expert testimony, supra, viz., $6500 per year, the owner's damages, for which the defendant contractor became liable, amounted to $415.26 (reckoning the period of delay as 23/30 of a month). Such liability of the contractor to the owner determines the amount allowable on the first counterclaim, as damages suffered by the contractor by reason of plaintiff's default, under the ruling below which is not challenged here.

## VIII.

We are of the opinion that the referee properly allowed interest on the amount which plaintiff is

entitled to be awarded on its cause of action, and on the amount properly allowable on the first counter-claim, from March 15, 1907, the date upon which the parties demanded payment of their respective claims, as the referee found. [See Trimble et al. v. Railroad Co., 180 Mo. 574, l. c. 587, 79 S. W. 678.]

The judgment will consequently be reversed and the cause remanded with directions to the circuit court to enter judgment for plaintiff for the sum of $3047.68 with interest thereon from March, 15, 1907, less the sum of $415.26 with interest thereon from the last mentioned date. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.