## HUGHES v. J. S. HOSKINS LUMBER CO.

### (District Court, D. New Jersey. April 11, 1905.)

1. SHIPPING—CHARTER PARTIES—CONSTRUCTION—DEMURRAGE—LAY DAYS.

Where a charter party provided that after 1 idle day the charterer had 10 days to load, and that for every day's detention thereafter he should pay demurrage, he was entitled to 11 days to load, including Sundays, holidays, or stormy days.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SAME.

Where a charter party provided that the charterer, after 1 idle day, should have 10 "working days" to load, before demurrage should be charged, he was entitled to 11 days, excluding Sundays and holidays, but not stormy days.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 568, 589, 590.]

3. SAME—DANGERS OF THE SEA.

Where a charter party provided that the dangers of the seas, etc., should be mutually excepted, but the evidence was insufficient to show that the charterer was necessarily prevented by storms from properly loading the barge, he was not entitled to a deduction of demurrage on that ground.

In Admiralty. Libel to recover for demurrage and freight.

James S. Macklin, for libelant.

Condict, Condict & Boardman and Walter Large, for respondent.

LANNING, District Judge. By the libel filed in this case the libelant seeks to recover certain sums alleged to be due for demurrage and freight under five separate charter parties, relating, respectively, to the five barges, Chesapeake, Dover, Etta Hughes, Hudson, and Falcon. The respondent embodied in its answer exceptions to certain specific allegations in the libel. When the parties first appeared before the commissioner for the examination of witnesses, the counsel for the respondent entered upon the record an objection to the taking of any testimony before the exceptions should be disposed of. They, however, cross-examined the libelant's witnesses, and examined witnesses on behalf of the respondent. Either party might have noticed the exceptions for hearing before any testimony was taken. 1 Am. & Eng. Ency. Pl. & Pr. 270. As the parties chose to proceed to take their proofs not-

withstanding the exceptions, the case should be considered upon its merits, and, if the proofs warrant the amendment of the libel in any respect in which it may be defective, an order to that effect may now be made.

In the charter party between the libelant, party of the first part, and the respondent, party of the second part, relating to the Chesapeake, and also in the one between the same parties relating to the Dover, and in the one between the same parties relating to the Etta Hughes, is this language:

"It is agreed that the lay days for loading and discharging shall be as follows: after one idle day, parties of the second part have ten days to load this barge, and that for each and every day's detention by default of said party of the second part, or agent, ten dollars per day shall be paid, day by day, by said party of the second part, or agent, to said party of the first part, or agent."

In the charter party between the same parties relating to the Hudson is this language:

"It is agreed that the lay days for loading and discharging shall be as follows: after one idle day, after barge is ready, parties of the second part have ten working days to load this barge, and that for each and every day's detention by default of said party of the second part, or agent, ten dollars per day shall be paid, day by day, by said party of the second part, or agent, to said party of the first part, or agent."

And in the charter party between the same parties relating to the Falcon is this language:

"It is agreed that the lay days for loading and discharging shall be as follows: after one idle day, parties of the second part have ten working days to load this barge, and that for each and every day's detention by default of said party of the second part, or agent, thirty dollars per day shall be paid, day by day, by said party of the second part, or agent, to said party of the first part, or agent."

The first question presented for consideration is as to the meaning of the word "days" and the words "working days" in these charter parties. Their meaning is important because of the relation they bear to the question of demurrage. In Pedersen v. Eugster (D. C.) 14 Fed. 422, Judge Billings, for the Eastern District of Louisiana, said:

"If the word 'days' alone is used with reference to lay days or days for loading a ship, all the running or successive days are counted. If the term 'working days' is used, all days are counted except Sundays and holidays. If the parties wish further to except days when the weather prevents work, they use the expression 'weather working days' or 'with customary dispatch,' or some other expression which clearly indicates the intention to recognize that days of inclemency from winds and storms are also excepted. Taking into consideration the cycle of years since this term 'working days' has received a commercial interpretation, as sanctioned by the judges, and the frequency and universality with which courts have adhered to that interpretation, for parties to use the expression 'working days' in a charter party is to express that, except Sundays and holidays, all days are to be counted, whatever be the state of the weather."

In Sorensen v. Keyser, 52 Fed. 163, 2 C. C. A. 650, Judge Pardee, in the Circuit Court of Appeals for the Fifth Circuit, held that "the term 'working days' means, in maritime affairs, running or calendar

days on which the law permits work to be done. It excludes Sundays and legal holidays, but not stormy days." In Hagerman v. Norton, 105 Fed. 996, 46 C. C. A. 1, he again said that "it is well settled that the term 'working days,' as ordinarily used in charter parties, excludes Sundays and holidays, but not rainy nor stormy days."

These authorities make it clear that the Chesapeake, the Dover, and the Etta Hughes were each required to be loaded within 10 days after 1 idle day (that is, within 11 days after being reported ready for cargo), not excluding Sundays or holidays or stormy days. The Hudson and the Falcon were each required to be loaded within 10 working days after 1 idle day (that is, within 11 days after being reported ready for cargo), excluding from the count, however, Sundays and holidays, but not stormy days.

But it is contended by the counsel of the respondent that the stormy days intervening before the expiration of the above-mentioned period of 11 days should not be counted as a part of that period, because of the provision in the charter parties that a penalty should be incurred only in case of "detention by default of said party of the second part, or agent." In my opinion, however, the failure to load any one of these barges within the specified time, notwithstanding stormy days intervened, in itself constituted a "default," within the meaning of the charter parties. Such was the construction of similar language in The Oluf (C. C.) 19 Fed. 459.

The counsel for the respondent also insists that the clause in the contracts, "the dangers of the seas, rivers and navigation always mutually excepted," entitles the respondent to a deduction of the days when work in loading the barges was suspended because of storm. But the evidence does not satisfy me that the storm referred to by the witnesses made it in any sense dangerous to engage in the work of loading the barges.

It becomes necessary, therefore, to determine the question as to the number of days, if any, for which the libelant is entitled to recover demurrage for each of the five barges. The three barges, the Chesapeake, the Dover, and the Etta Hughes, arrived at Piankitank river, Va., where they were to receive their cargoes, on Saturday, August 31, 1901. They were all taken to their loading place on Monday, September 2d, at about 4 o'clock in the afternoon, but were not placed in position for loading until September 3d. They were required to be loaded within 11 days; that is, by September 14th. The loading of the Chesapeake was completed on September 16th. Consequently there are two days' demurrage, or $20, chargeable against the respondent in the case of the Chesapeake. The loading of the Dover was also completed on September 16th, and there is chargeable against the respondent in respect to that barge the same sum, $20.

When the Etta Hughes arrived at the place for receiving her cargo, it was found that her stern porthole was too small for placing in her the lumber which she was to receive. There was considerable delay, first in enlarging the existing porthole, and then in making a second one. She was not completely loaded

until October 11th. I am satisfied that the change was not made in her portholes so as to allow of reasonably convenient loading before September 11th. From September 11th to October 11th is 30 days. From this there should be deducted the 10 days allowed for loading and the 1 idle day, leaving 19 days for demurrage, which, at $10 per day, amounts to $190.

The Hudson and Falcon arrived together at the place where they were to receive their cargoes on September 21st. By the libel it is charged that the loading of the Hudson was completed on October 3d. By this allegation it would appear that the Hudson was at the place where she received her cargo but 12 days. Two of these days were Sundays, and one was an idle day. The Sundays in this case should be deducted, because the charter party gave to the respondent 10 "working days" within which to load her. The result is that, according to the libel, no default on the part of the respondent has been shown. Nor is any shown by the evidence. While it is proven that her loading was completed on October 11th, and not on October 3d, as alleged in the libel, there is no proof that the delay was in any wise due to the neglect or default of the respondent. Consequently no demurrage can be charged for the Hudson.

The Falcon was ready to be loaded on September 23d, and the respondent finished loading her on October 18th. Twenty-five days were therefore consumed in loading her. The respondent was entitled to 10 working days and 1 idle day. There should be deducted from the 25 days the 10 working days and 1 idle day and 3 Sundays, or 14 days in all. This leaves 11 days for demurrage. The Falcon was a steam barge, and the demurrage in her case is fixed by her charter party at $30 per day. Consequently the demurrage in this case is $330.

A further claim is made in the cases of the Chesapeake, the Etta Hughes, and the Hudson for freight. The charter party for each of these vessels provided that the libelant should pay freight charges of $900 for each vessel, and also 4 cents per lineal foot of lumber in excess of 20,000 lineal feet on each barge. There is no proper proof that any of these barges carried more than 20,000 feet. The only evidence offered on the subject was in the form of testimony from copies of letters and bills sent by the libelant to the respondent, and lead-pencil memoranda on the backs of the charter parties. There is no evidence that any one measured the number of feet of lumber carried by any one of these three barges. The evidence offered was objected to by the respondent. The objection must be sustained. It follows that nothing can be allowed for freight charges.

The result is that there should be a decree for the libelant for demurrage in the case of the Chesapeake for $20, in the case of the Dover for $20, in the case of the Etta Hughes for $190, and in the case of the Falcon for $330, making $560 in all.