BARNES et al. v. CENTRAL BANK & TRUST CO. et al.

(Court of Civil Appeals of Texas. El Paso. Feb. 14, 1913. Rehearing Denied Feb. 26, 1913.)

1. ACTION (§ 32*)—ABOLITION OF DISTINCTIONS.

The rules of equity pleading existing in jurisdictions having a separate equity procedure are not recognized in Texas.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 257–261, 316; Dec. Dig. § 32.*]

2. PLEADING (§ 67*)—ALLEGATIONS OF PETITION—MATTER IN AVOIDANCE.

In an action to recover the residue after a sale of land by a trustee to pay plaintiff's debt, pursuant to an agreement by which the lands which were held in trust for the creditor and debtor were to be sold and the residue equally divided upon payment of the debt, allegations of the petition that defendants fraudulently represented that the whole proceeds of the sale were barely sufficient to pay the debt, and, believing such representations, plaintiff, at defendants' request, released his interest in the land, were unnecessary, being more properly set up by way of confession and avoidance in a supplemental petition.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 139; Dec. Dig. § 67.*]

3. PLEADING (§ 376*)—ADMISSIONS—NECESSITY OF PROOF.

Admissions contained in the pleadings need not be proven, so that where the petition alleged the release by plaintiff of an obligation relied on by plaintiff, defendant could rely upon such release without proving it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1225–1227; Dec. Dig. § 376.*]

4. PLEADING (§ 376*)—ADMISSIONS.

Where the petition alleged that a release executed by plaintiff was obtained by defendant's fraud, defendant could rely on the admission of the execution of the release without also accepting the allegations as to fraud; the allegation as to the execution of the release being an admission against interest while the allegation of fraud in procuring it was self-serving.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1225–1227; Dec. Dig. § 376.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by O. H. Barnes and another against the Central Bank & Trust Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Harris & Harris, of Houston, for appellants. H. L. Stone, Jr., John G. Tod, C. R. Wharton, Gill & Jones, and Cole, Wilson & Cole, all of Houston, for appellees.

HIGGINS, J. This is an action on a written contract by O. H. Barnes and C. B. Moling, appellants, against the Central Bank & Trust Company, incorporated, F. E. Pye, E. R. Johnson, Ned Gill, and Richard Rodgers to recover from the Central Bank & Trust Company and from Pye and Johnson one-half of the net profits accruing on the purchase and sale of certain real estate. The case was tried before a jury, and upon the conclusion of plaintiffs' evidence defend-

ants requested an instructed verdict in their favor, which was granted by the court, and verdict and judgment returned and rendered accordingly.

Plaintiffs averred that on September 22, 1908, they, as parties of the first part, entered into a written contract with Pye and Johnson as parties of the second part, whereby in consideration of Pye and Johnson loaning the sum of $2,107.08 to the plaintiffs, it was agreed between the parties that the title to certain lands, fully described in the petition, should be taken by the Central Bank & Trust Company as an agreed trustee for both parties to said contract; that in said contract it was provided that the Central Bank & Trust Company should hold the title to said lands in trust for the equal benefit of the parties of the first part and of the second part, and that when the same had been sold, the proceeds thereof should be disbursed as follows: First, to the payment of said indebtedness of $2,107.08; second, to the payment of any accrued taxes, interest, or other expense which might have been incurred in disposing of the lands; third, the balance, or net profits, were to be paid after deducting such expenses, one-half to Barnes and Moling, and one-half to Pye and Johnson; that said trustee had sold the land at a profit over and above said indebtedness of $2,107.08 and the expenses mentioned in the contract, but had failed to account to the plaintiffs for their one-half of the net profits; that an accounting had been demanded of the trustee and of Pye and Johnson, but the same had never been furnished. Ned Gill was alleged to be the present holder of the legal title to the lands, and Richard Rodgers the equitable owner thereof.

In the fifth paragraph it was alleged: "And these plaintiffs, Barnes and Moling, say that on or about the 1st day of April, A. D. 1909, the time that sale was made, as aforesaid, by the said trustee of the said lands, defendants F. E. Pye and E. R. Johnson represented to the said plaintiffs, O. H. Barnes and C. B. Moling, and assured the plaintiffs, Barnes and Moling, that the aforesaid lands had been sold by the aforesaid trustee for barely enough to pay the aforesaid note and expense mentioned in the aforesaid written contract and agreement; that instead of there being any net profit to divide according to the terms of said written agreement, the deal was closed at an actual loss. And these plaintiffs, Barnes and Moling, say that at the time they believed the statements made to them by defendants Pye and Johnson, and trusted said statements and relied upon the said Pye and Johnson, believing said statements to be the truth, and that thereupon these plaintiffs, at the urgent and earnest request of the defendants Pye and Johnson, executed a certain release of their interest in said land, in accordance with the terms of said written agreement; but these plaintiffs say that such release never has been placed of record to the best of their knowledge, information, and belief, and that these plaintiffs have no copy of such release, and are not advised at the present time of the exact terms thereof, and they hereby notify the defendants to produce said original release on the hearing of this cause. And these plaintiffs further allege, on information and belief, and they so charge the fact to be, that the aforesaid statements of defendants Pye and Johnson that said lands were not sold at a profit were false and fraudulent, and were known at the time by said Pye and Johnson to be false and fraudulent, and that same were made at the time for the express purpose of causing these plaintiffs, Barnes and Moling, to alter their position for the worse, and to release all their interest in the aforesaid lands in the aforesaid contract."

Upon hearing, judgment was prayed that the Central Bank & Trust Company and Pye and Johnson be required to render an accounting of all moneys received and expended on account of said lands under the contract, and for judgment for all sums shown by such accounting to be due the plaintiffs, and if the court should find that Gill and Rodgers were not purchasers of the lands in good faith for value and without notice, then that the title thereto be divested out of them and vested in a trustee, to be appointed by the court for the purpose of carrying out the provisions of the written contract. Upon the hearing proof was offered in support of all of the material allegations in the petition, except those allegations contained in the fifth paragraph quoted above verbatim, and as to those no proof whatever was offered, either of the release or of the alleged false and fraudulent representations inducing its execution. In behalf of the plaintiffs it is urged that, this being an equitable proceeding, the rules of equity pleading are applicable, and that the fifth paragraph of the petition is merely what is known as the charging part of a bill in equity, which is a wholly unnecessary allegation, introduced merely for the purpose of anticipating some supposed defense which may be set up by the defendants; that being thus unnecessary, plaintiffs were not required to introduce any proof in support thereof.

In Barton's Suit in Equity, p. 31, the charging part of a bill is thus described: "This part of the bill alleges the pretenses which it is supposed that the defendant will set up for his excuse or justification, and then charges other matters to disprove or avoid them. It is, used for the purpose of obtaining a discovery of the defendant's case, or of putting in issue some matter which it is not for the interest of the plaintiff to admit. The introduction of this part of the bill as a distinct allegation is comparatively recent, and is wholly unnecessary in any

case. It arose from a desire to avoid the delay and expense attending the use of special replications and rejoinders. The rules of the Supreme Court of the United States make it optional with the plaintiff to include this portion of the bill in either the narrative or the stating part."

Mr. Beach in his Modern Equity, par. 87, says: "That the charging part is often omitted, and is also rendered unnecessary in the federal courts, and does not seem indispensable in any case."

Bates in his Federal Equity (section 106) says: "That the charging part is the fifth part of the bill, and, although so distinguished a lawyer as Lord Kenyon, while at the bar, never would put it in the bills drawn by him, yet its introduction in many cases has proved highly beneficial, as by the charging part the plaintiff may state by way of pretense any fact or pretended facts which he supposes or anticipates will be interposed by the defendant as a defense to the case made by the plaintiff in the stating part of the bill, and may deny or explain or confess and avoid such defense by the averment of other facts."

[1] It is unnecessary for us to enter upon a consideration or discussion of this matter of equity pleading as recognized in those jurisdictions where the distinction between the rules of common law or code pleading and equity pleading are recognized. No such rule has ever been adopted or recognized in this state, is inconsistent with our rules and practice, and cannot be followed in this case, unless numerous authorities, which will be reviewed are disregarded.

[2, 3] We quite agree with appellant that all this portion of his petition was unnecessary, and think it would have been more properly set up in a supplemental petition by way of confession and avoidance. It certainly cannot be denied that, had the defendants, after plaintiffs had rested their case, offered in evidence the release described in plaintiffs' petition, and also pleaded in their answer, it would then have been incumbent upon plaintiffs to have offered evidence to substantiate their allegations that the same had been procured through the false and fraudulent representations of Pye and Johnson so as to avoid its legal effect. Now was there any necessity for the defendants to formally offer in evidence this release in order to entitle them to a peremptory instruction? It is a settled rule of pleading that admissions contained in pleadings are not required to be proven, and no evidence of their truth is required. Therefore there was no necessity on the part of the appellees to offer the release in evidence, because its existence had already been admitted by the plaintiffs in their pleadings, and the cause stood as if defendants had formally introduced the same, and plaintiffs had failed to offer any evidence to substantiate the ground upon which they attacked its validity.

[4] Appellants argue that defendants cannot rely upon any of the allegations with reference to the execution of the release, without at the same time accepting as true those allegations of fraud impeaching its validity, but this is not sound, since the allegations with reference to the execution and delivery of the release are admissions against interest, whereas the allegations of fraud in procuring the same are self-serving.

The question here presented is by no means a new one in this state, although arising in somewhat different form. In Graham v. Henry, 17 Tex. 165, plaintiff alleged a transfer by him of a land certificate, and sought to cancel the assignment of the certificate because of fraud alleged to have been practiced in the procurement of the assignment. Plaintiff failed to prove his averment of fraud, and, defendant not proving the transfer of the certificate to him, judgment was rendered in the lower court for plaintiff, on the ground that, it having been shown that the certificate issued to him, and no assignment from him being shown by defendant, he was entitled to recover the land. The court said: "The contract being assignable, and the fact of the assignment being expressly admitted by the plaintiff in his petition, the defendant was under no necessity of proving it; but it devolved on the plaintiff to prove the matters alleged by him to countervail its legal effect. The instruction asked by the defendant to that effect was proper, and it was error to refuse it. Under the ruling of the court, excluding evidence of the assignment from the plaintiff to Thorn and refusing the instruction asked by the defendant, he was denied the benefit of the assignment, though it was admitted by the plaintiff, and there was no evidence to countervail its legal effect. The consequence was a verdict for the plaintiff, when upon the case presented upon the record it appears that the title was in the defendant. The verdict, therefore, was contrary to the law and the evidence."

The foregoing case is conclusive against the contention of appellants, and the rule there laid down has been frequently recognized in subsequent cases.

Hill v. Allison, 51 Tex. 390, was an action of trespass to try title, in which the plaintiff set up a deed under which he alleged the defendants claimed, and then by allegations sought to avoid the effect thereof. It was held in this case that the burden of proof was upon plaintiff to show the invalidity of the deed, and unless he did so he was not entitled to recover.

In Ogden v. Bosse, 86 Tex. 336, 24 S. W. 798, plaintiff brought an action in trespass to try title, alleging the chain of title under which defendant held was fraudulent. The

pleadings disclosed that the parties were claiming under common source. It was there said, in opinion by Justice Brown: "In this state of the pleading it was not necessary for either party to prove the execution of or produce either the deed from Clark to Moore, or that from Moore to Johnson. It is not necessary for either party to prove that which is distinctly alleged by the adverse party. Graham v. Henry, 17 Tex. 167. Each party could, without reading it as evidence, avail himself of whatever admissions were made in the pleading of his adversary, without admitting anything alleged therein favorable to the party pleading."

Bourke v. Vanderlip, 22 Tex. 222, was a case in which it was sought to enjoin the sale of property. The existence of the deed of trust was admitted in plaintiff's petition, and upon the injunction being denied, it was held that judgment was properly rendered in favor of the defendant for the amount of the debt admitted by plaintiff, although no evidence of the debt was offered. The court said: "Where the case of a party is thus confessed by the adverse party there can be no necessity that he should aver and prove it. The object of the allegation is to admit proof; but there is no necessity for proof where the facts are admitted, and therefore not in issue between the parties." See, also, Walker v. Burks, 48 Tex. 206; League v. State, 93 Tex. 553, 57 S. W. 34; Railway Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877; Cage v. Owens, 103 S. W. 1191; Bass v. Receivers, 146 S. W. 658; all of which are conclusive against appellants' contention herein.

Affirmed.