## WM. B. HUGHES PRODUCE CO. v. PULLEY.

No. 2775. Decided February 8, 1916. (155 Pac. 337.)

1. SALES—DELIVERY—FAULT OF BUYER. Where a contract for the sale of potatoes required their delivery in sacks, the sacks to be furnished by the buyer, and he failed to furnish the sacks, he could not thereafter recover for breach of contract when the seller sold them to another party; the condition requiring the buyer to furnish the sacks being a material portion of the contract and prerequisite to delivery of the potatoes to him. (Page 546.)

2. CONTRACTS—CONSTRUCTION—POWER OF COURT. In construing the stipulations of a contract, a court cannot substitute their own judgment for that of the parties, since they can enforce, but not create, liabilities. (Page 546.)

3. SALES—DELIVERY—DEMAND BY BUYER. Where a contract for the sale of potatoes required their delivery within thirty days from its date, but the buyers did not demand them for 68 days, he, under the facts and circumstances, could not thereafter recover for failure to deliver the potatoes, since he could not indefinitely postpone the demand. (Page 548.)

Appeal from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by William B. Hughes, doing business as William B. Hughes Produce Company, against George H. Pulley.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED with directions.

*J. W. N. Whitecotton,* for appellant.

*W. E. Rydalch* and *Edw. McGurrin,* for respondent.

FRICK, J.

This is an action for breach of contract. The action is based upon a certain contract, which was introduced in evidence by the plaintiff as his Exhibits A and B. Exhibit A reads:

"February 4, 1911.

"Received from Wm. B. Hughes Produce Company of Salt Lake City, Utah, ten and no 100 dollars in part payment of six hundred bushels or more of first-class potatoes at $1.25 per hundred sacked, to be deilvered f. o. b. cars at American Fork within 30 days from date.   Balance of payment to be made on the delivery of said potatoes.

Geo. H. Pulley."

Exhibit B is as follows:

"For R. N. Z. potatoes.  Price $1.25 per cwt., sacked f. o. b. American Fork.   Advances $10.00.   Sacks to be furnished by William B. Hughes."

The undisputed evidence is to the effect that plaintiff was doing business in Salt Lake City under the name of William B. Hughes Produce Company, and that he, under that name, entered into the foregoing agreement with the defendant, who was a farmer at American Fork, Utah County, Utah; that the plaintiff at no time furnished any sacks, nor offered to do so, in which to sack the potatoes; that on the 26th day of March, 1911, the defendant, not having heard anything from the plaintiff regarding said potatoes, sold the same for five cents less per bushel than the contract price, the price he sold them for being the market price for potatoes at American Fork at that time; that the defendant did not notify the plaintiff of his intention to sell the potatoes; that the plaintiff demanded the potatoes on April 14, 1911, at which time he was informed by the defendant that he had disposed of the potatoes.   The plaintiff also testified that the market value of the potatoes "to me" at American Fork in February and March was $1.45 per hundredweight.   Upon substantially the foregoing evidence the court found that the defendant had breached the contract, and that the plaintiff, in consequence thereof, was damaged in the sum of $54.   Judgment was accordingly entered in favor of the plaintiff, and the defendant appeals.

The defendant insists that the findings are not supported by the evidence, and that the conclusions of law and judgment are contrary to law.   It seems to us that the whole question hinges upon what meaning shall be given to the contract in

question.   Considering Exhibits A and B together for the purpose of ascertaining the intention of the parties, as we must do, what are the terms and conditions of the agreement?

In our opinion they are just these: The defendant sold to the plaintiff at least 600 bushels of first-class potatoes at $1.25 per hundredweight, to be delivered in sacks f. o. b. cars at American Fork within thirty days from February 4, 1911; that the plaintiff paid the defendant ten dollars as part payment of the purchase price, the remainder to be paid upon delivery of the potatoes, and the plaintiff further agreed that he would furnish the sacks in which to sack the potatoes.   Now, it seems to us that while the defendant had obligated himself to deliver the potatoes as stipulated in the agreement, the plaintiff had bound himself to furnish the necessary sacks in which the potatoes were to be sacked before delivery.   If it be held that plaintiff was not required to furnish the sacks, then something he agreed to do must be eliminated from the agreement.   How can it reasonably be contended that the plaintiff has complied with the stipulations of the contract, unless it be shown that he had tendered the sacks to the defendant in which the potatoes were to be placed before delivery and shipment?   Plaintiff's counsel, however, vigorously insist that the furnishing of the sacks by the plaintiff was not a condition precedent to his right to have the potatoes delivered, because his agreement to furnish sacks was not an essential or material part of the contract.   That seems to have been the view taken by the trial court.   Indeed, unless that view is taken, the court's conclusions cannot be sustained.

In support of their contention counsel cite and rely on a case from the Supreme Court of Illinois, namely, *McKee* v. *Retter*, 10 Ill. (5 Gilman) 315, decided in 1848, in which a contract for the sale of wheat, very similar in terms to the one in question here, was passed on, and where it was held that the furnishing of the sacks by the plaintiff was not a condition precedent, and that the defendants were not excused for a failure to deliver the wheat because the plaintiff had not furnished the sacks in which it was to be sacked be-

fore delivery. It was held that the failure to furnish the
sacks by the plaintiff was too "insignificant" to justify the
defendants in refusing to deliver the wheat at the time and
place agreed upon. Upon the other hand, counsel for the
defendant cites and relies upon a case from the Supreme
Court of Indiana (*Russell* v. *Witt et al.*, 38 Ind. 9), where
the defendants in error agreed to furnish the sacks in which
a certain quantity of clover seed was to be sacked by the
plaintiff in error which the defendants in error had purchased
from Russell, and where the defendants in error had failed
to furnish the sacks and Russell then had disposed of the
clover seed elsewhere and was sued for breach of contract.
The Supreme Court of Indiana held that the furnishing of
the sacks by defendants in error was a condition precedent
to their right to have the clover seed delivered, and reversed
the judgment of the court below, which was in their favor.
We can see no escape from either the logic or justice of that
decision. Nor can we understand how the Supreme Court of
Illinois could logically have arrived at the conclusion that the
furnishing of the sacks was a matter too "insignificant" to
justify the defendant's failure to deliver the wheat at the
time specified in the contract. In arriving at such a conclu-
sion the court in effect held that, although one party to a con-
tract is bound by its stipulations, yet the other is not. It
might be that a certain stipulation in a contract is so foreign
to the real purpose and intention of the parties in entering
into it that a court might well say that the mere failure to
comply with such a stipulation by the party agreeing to
perform it offers no excuse for the other party to refuse to
comply with all of the terms of his agreement. Courts should,
however, be very careful not to excuse parties from their obli-
gations by substituting their own judgment for that of the
parties with respect to what constitutes a material stipulation
in a contract. When courts once enter into that realm, they
will find it somewhat difficult to say just where to pause. This
court is firmly committed to the doctrine that courts may
"enforce, but not create, liabilities." *Smith* v. *Bowman,* 32
Utah 43, 88 Pac. 687, 9 L. R. A. (N. S.) 889; *Blyth-Fargo Co.*
v. *Free,* 46 Utah, 233, 148 Pac. 430. While in those cases surety

contracts were involved, yet the principle that courts are created to enforce, and not to excuse or create, liability is just as much involved here as it was in those cases. What right have we to excuse the plaintiff from furnishing the sacks while we enforce the obligation of the defendant to deliver the potatoes, although no sacks were furnished nor tendered him at any time, not even on the 14th day of April, when the delivery of the potatoes was finally demanded by the plaintiff?

Then the further question arises of whether the plaintiff could postpone the demand for the potatoes indefinitely. That is, whether he was, under the terms of the contract, entitled to demand them at any time. The potatoes were to be sacked and delivered within thirty days from February 4, 1911. No sacks were furnished, and no demand was made for the potatoes until April 14th following; that is, not until sixty-eight days had elapsed. If the plaintiff could wait for sixty-eight days, why could he not wait six months before making a demand? True it is that, had the plaintiff not agreed to furnish sacks in which the potatoes were to be placed and delivered, he would have been required to do nothing. Under the terms of the contract the defendant was, however, required to sack the potatoes and to deliver them sacked within thirty days from the making of the contract. He, we think, was not required to comply with those conditions unless he was furnished the sacks in which to place the potatoes. According to the opinion of the Supreme Court of Illinois in the case referred to the plaintiff's failure to furnish the sacks did not excuse the defendant from delivering the potatoes, for the reason that if sacks were necessary, he should have provided them. Now, how many sacks, what kind and quality, and what would be the cost thereof to sack 600 bushels of potatoes we are not advised. It may be that it would have required 600 sacks. It may well be that it would have been difficult for the defendant to obtain that number of sacks at a reasonable price. If he did so, however, he would perhaps have to invest money in an article he did not need, or would perhaps have had to sue the plaintiff to recover back the money he invested in the sacks. In either event he was placed in a dilemma. What right has this, or any, court

to place that burden upon him? The language of the contract is plain and unambiguous that the plaintiff was to furnish the sacks. Had the plaintiff complied with the terms of his agreement in that regard, no dilemma nor controversy would perhaps have arisen. The plaintiff, and not the defendant, therefore, is responsible for defendant's failure to deliver the potatoes at the time and place specified in the agreement. That being so, we cannot see how the plaintiff can prevail in an action for a breach of a contract, for which breach he alone is responsible.

The judgment is reversed, and the cause is remanded to the District Court of Utah County, with directions to grant a new trial. Costs to appellant.

STRAUP, C. J., and McCARTY, J., concur.