### WRIGHT v. KING. (No. 9687.)

(Court of Civil Appeals of Texas. Dallas. Jan. 29, 1927. Rehearing Denied March 19, 1927.)

1. **Damages &#9756;189—In contractor's suit on contract to build theater, defendant must sufficiently prove claim for damages for delay to give definite basis for computing such damages.**

In contractor's suit for amount due under contract to build theater, defendant had burden to make out claim for damages for delay alleged in cross-action with sufficient explicitness to give jury definite basis for computing such damages.

2. **Pleading &#9756;376—Admissions in pleading need not be proved.**

Party litigant is bound by admissions made in his pleading, and as to them the other litigant is not required to offer evidence to prove existence of fact admitted, but may rely entirely on such admission.

3. **Trial &#9756;396(7)—Findings that contractor completed work within time stipulated held erroneous, where undisputed admission in his pleading showed that longer time was taken.**

Findings that contractor completed work on theater within time stipulated, which was 55 working days, *held* erroneous, in view of undisputed fact that longer time was taken, shown by contractor's admission in pleading.

4. **Damages &#9756;40(4)—Contractor held liable for rental value of theater under lease for delay in completing work, where he had knowledge of lease, but not of its terms.**

Contractor *held* liable for rental value of theater under lease for inexcusable delay in completing work, where he had knowledge of lease, but not of terms thereof, since law will imply that parties intended that loss of rents would measure damages, and knowledge of terms was merely aid in ascertaining amount of damages.

5. **Contracts &#9756;352(1)—Whether owner of building ordering delay in construction intended to waive provision requiring contractor to report delay to architect to obtain allowance therefor held for jury.**

Where owner of theater building ordered delay in construction, question whether he intended to waive provision requiring contractor to report delay to architect within 48 hours to get allowance for time of such delay *held* for jury.

6. **Evidence &#9756;457—Oral evidence held admissible to show whether "working days" in construction contract included legal holidays, stormy days, and Saturday afternoons.**

Where contract required theater to be built in 55 "working days," oral evidence *held* admissible to show whether such term included legal holidays, stormy days, and Saturday afternoons.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Working Days.]

7. **Contracts &#9756;213(2)—Sundays, as matter of law, are not "working days" within contract for construction of building.**

Sundays are excluded as matter of law in computing 55 "working days" within which contractor was required to complete building.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by W. H. King against G. G. Wright, in which defendant filed a cross-action. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

K. R. Craig and Eckford & McMahon, all of Dallas, for appellant.

Turner & Rodgers, of Dallas, for appellee.

JONES, C. J. In a suit in the district court of Dallas county, appellee was awarded a judgment in the sum of $2,872.43 against appellant, and this judgment and the matters involved therein are duly brought before this court for review.

---

&#9756;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellant caused to be constructed what is known as the Circle Theater building in the city of Dallas. Appellee was awarded the contract for the construction of the stone work, brick work, cement work, stage joists, first and second floor joists, ceiling joists, and shiplap for roof. The other portions of the building were constructed under separate and independent contracts, and by other parties. The contract contained the stipulation that the work done by him should not exceed the sum of $26,712.50, and that he was to receive from the owner for doing this work a "flat fee" of $2,175, and further that, if the work was completed for a less sum than the guarantee, the contractor was to be paid 50 per cent. of the amount saved under the guaranteed cost.

Two clauses of this contract are essential to the question here involved. They are as follows:

"Art. VI. The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit, fifty-five working days.

"Art. VII. Should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architect, or of any other contractor employed by the owner upon the work, or by any damage caused by fire, or other casualty for which the contractor is not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay."

The amount of the recovery consists of a balance alleged to be due on the contract price and the agreed price for extra work that the contractor was required to do, including an item of approximately $400 alleged to be the contractor's share of the saving under the guaranteed price.

Appellant defended the suit by attempting to offset appellee's claim on allegations to the effect that, before he had entered into the contract with appellee, he had leased the building for a rental of $15,000 per annum, to begin from the day the building was completed and ready for the lessee, and that appellee knew that the building had been so leased, and that by reason of the long delay he had suffered damages in loss of rentals from the lessee in a sum in excess of the amount claimed by appellant. Appellant also controverted a number of items on which appellee sought recovery, and prayed for judgment against appellee in the amount shown by his answer to be due him. The issue on these controverted items was submitted for the determination of the jury, and is not material to the questions involved on this appeal, as only the cross-action for damages by reason of delay in completing the work under appellant's contract is under review.

In answer to appellant's cross-action for damages for delay, appellee filed a supplemental petition, in which it was alleged that the work was completed on November 8, 1923, or after the lapse of 113 days from the beginning of the work, and undertook to excuse himself in not completing the work within 55 working days by alleging that, under the generally accepted meaning of the term "working days," all Sundays, the one legal holiday that intervened, one-half day for each intervening Saturday, and all days in which he could not work, either on account of the stormy condition of the weather, or delay by the act of appellant, or his architect, should be excluded in the computation, and that, by excluding such days, the work was completed within less than 55 working days. Appellee also alleged a waiver by appellant of the provisions of article VII of the contract in reference to the manner in which he could get credit for the therein named delays. These allegations, except as to the time used in completing the work, all went out on appellant's special exceptions.

The case was tried to a jury and submitted on special issues, and those issues that are responsive to the assignments of error and necessary for a decision on this appeal are as follows:

"Question No. 3: Was the plaintiff informed at and before the time the contract sued upon was executed of the lease of the building by the defendant, and of the terms of said lease? Answer: No.

"Question No. 5: Did the failure, if any, of the plaintiff to complete his work within the time stipulated delay the completion of the building for any length of time? Answer: No.

"Question No. 6: What length of time, if any, was the completion of the building delayed by the failure of the plaintiff to complete the work covered by his contract within the time stipulated? Answer: No days."

Appellant has assigned error on the submission of special issue No. 3 because such submission places a greater burden on appellant than the law required, in that, before an affirmative answer could be given to said issue as submitted, the jury must believe not only that appellee knew that the building had been leased under a rental contract, but also knew the terms of such lease contract. Appellant requested an instruction curing the alleged error in the framing of said issue, which was refused. This assignment of error, however, will only become material in the event that appellant's contention in reference to the findings of the jury on special issues 5 and 6 shall be sustained. The assignment of error in reference to each of

these issues is that these findings are contrary to the undisputed evidence in the case, and that their submission is not supported by any defensive pleading, such pleading having been stricken out on exceptions. We will consider the assignments in reference to special issues 5, and 6 before considering the assignment in reference to special issue No. 3.

[1-3] The effect of the finding of the jury on special issues 5 and 6 is that appellee completed the work within 55 "working days." Can these findings be allowed to stand under this record? Neither the evidence offered by appellant nor the evidence offered by appellee states the time consumed in completing the work under appellant's contract, nor is there any evidence stating the time when all work on the building was completed and the lessee took possession other than it was "shortly before Christmas," 1923. The evidence shows that some time was required from the completion of appellant's work before work under other contracts could be completed and the building finished, but does not show the extent of this time. The burden rested on appellant to make out his claim for damages with sufficient explicitness to give the jury a definite basis for computing his damages, and, if we are required to look alone to the evidence given, then it should be said that appellant had failed to discharge the burden resting on him, and the findings of the jury on the two said issues would be justified. This necessary fact of the time consumed by appellee in doing this work indisputably appears in this record, for it is elementary that a party litigant is bound by admissions made in his pleading, and that as to such admissions the other litigant is not required to offer evidence to prove the existence of the fact admitted but may rely entirely upon such admission. Ogden v. Bosse, 86 Tex. 336, 24 S. W. 798; Crosby v. Bonnowsky, 29 Tex. Civ. App. 455, 69 S. W. 212; Houston E. & W. T. R. Co. v. Waltman (Tex. Civ. App.) 132 S. W. 518; Barnes v. Bank (Tex. Civ. App.) 153 S. W. 1172; Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658; Dunlap v. Thrasher, 48 Tex. Civ. App. 324, 107 S. W. 83.

Appellee, in his supplemental petition, admitted that the work under the contract was not completed until the 8th of November, and that 113 days had elapsed, including Sundays, from the beginning to the completion of the work. He also alleged the number of Sundays included within this time. His allegations following this admission, attempting to justify the delay, were stricken out by the court on demurrer, and these allegations were not before the court as pleading in the case. They could form no basis for the introduction of evidence or submission of issues to the jury. This admission of 113 days was accepted by appellant as the correct time used in completing the work. If we subtract the 55 days allowed for the

work from the 113 days, and deduct from this difference the admitted number of Sundays, there is given the exact number of working days appellee delayed the completion of the contract, under the trial court's theory of the case. These issues, therefore, went to the jury on the undisputed fact that there was an unexcused delay in a fixed number of days by appellee in doing the work, and the findings on such issues are contrary to this undisputed fact.

Appellee contends that this admission of 113 days went out of his pleading on exception, but an examination of the exceptions shows that appellee is mistaken in this, and that no exception was levelled against this admission. We therefore hold that the assignments of error in reference to the findings of the jury on these two issues must be sustained.

[4] As to the assignment of error on the submission of issue No. 3, is it required that appellee have both knowledge of the fact that the building had been leased by appellant, to begin immediately on its completion, and of the terms on which it was leased, before appellant could recover the lost rents on the lease, as his measure of damages? We do not think so. If there had been no lease contract, the measure of damages for failure to complete the work within the time fixed by the contract would have been the value of the use of the building, which is ordinarily its rental value, for the time of the delay. Bounds v. Hickerson, 26 Tex. Civ. App. 608, 63 S. W. 887; 3 Elliott on Contracts, § 2148, and authorities cited in note. However, appellant does not seek to recover damages under this rule, but alleges a different rule in view of the special circumstances under which this contract was executed. Such circumstances are alleged to be that, before the contract with appellee, he had rented the completed building, with the payment of rent to begin as soon as it was ready for occupancy, and that appellee knew of his rental contract and its terms when the building contract was executed. Damages, measured under the general rule above announced, are such that necessarily flow from the inexcusable delay in the performance of the work of a contractor, and the law presumes that the parties contracted in reference thereto. Damages, measured under the special rule alleged, do not necessarily flow from the said act of inexcusable delay, and the law indulges no presumption that the parties contracted with reference to the said rental contract. However, as the rental contract existed at the time of the execution of the building contract, the loss of rents, resulting from the said inexcusable delay, would measure the damages which would flow naturally and directly from such wrongful act. If appellee knew of such rental contract when he entered into his obligation, the law would imply the fact that the contract was entered

into with the intention that the damages that thus naturally and directly flow from the delay should measure the damages for such a breach of the building contract. Knowledge that there existed a rental contract covering the time of the inexcusable delay is all that is necessary to fix the contract rental price as the measure of damages, for the price the lessee was to pay is a mere detail in ascertaining the amount of the damages and not an element of the measure of damages. Such rental price is not essential to determine the question of what measure of damages was in contemplation of the parties at the time the building contract was executed, and knowledge of it would only acquaint appellee with the precise amount to which he would have to respond, without making clearer the rule to be applied to measure the damages. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; Western Union Tel. Co. v. Sheffield, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790; Western Union Tel. Co. v. Brown, 71 Tex. 723, 10 S. W. 323, 2 L. R. A. 766; 8 R. C. L. 461, 462. Under the evidence in the instant case, the jury could have found that appellee knew that the building was leased, and also have found that he did not know for what price it was leased. We therefore hold it was error not to have given appellee's requested charge restricting issue No. 3 as submitted by the court to a knowledge of only the fact of an existing lease contract.

[5] As this case must be reversed, we deem it proper to call the trial court's attention to what we conceive to be error committed in the ruling sustaining certain special exceptions urged by appellant against appellee's supplemental petition. We are of the opinion that the pleading was sufficient to make a jury issue of whether appellant waived certain requirements in reference to credit for delays caused by himself and contractors for other portions of the building. The grounds of these exceptions are that appellee did not allege that he had given written notice and had the time of delay fixed by the architect, as required by article VII of the contract above quoted. This article is manifestly for the benefit of appellant, and its provisions could be waived by him. The allegations are to the effect that each delay alleged in appellee's supplemental petition was caused by the order of appellant, the owner of the building, and this, in conjunction with other facts alleged, we think sufficiently raised the issue of waiver.

Article VII above quoted, shows that the parties contemplated there might be delay in the completion of the work because of other contracts and because of some failure on the part of the appellant to do his contractual duty. Appellant, as owner of the building, and for his own protection, provided in said article that any extension of time allowed for such delay should be fixed by the architect, and, in effect, that the architect should not allow any time unless a claim therefor was presented to him in writing within 48 hours of the occurrence of such delay. This provision is valid and binding on appellee, unless appellant chose to waive it. When appellant, as shown by the allegation, himself ordered the delay, the reason for this protective measure ceased, and we are of the opinion that it is at least for the jury to say whether he intended by such act to waive such provision.

[6, 7] We are also inclined to the opinion that the term "working days" is such a term as would permit oral evidence to explain its meaning under a common and universal usage among contractors and owners of buildings, provided such explanation did not infringe on the matters provided for in said article VII of the contract. Custom and usage cannot overturn specific contracts to the contrary. We do not understand, though, that holidays and rainy or stormy days are included within the terms of article VII. We are moved to make this observation by reason of the fact that the courts are at variance in construing the meaning of the term "working days," in such a contract, where no extrinsic evidence is given. In the case of Christopher & Simpson Architectural Iron & Foundry Co. v. Steininger Const. Co., 200 Mo. App. 33, 205 S. W. 278, the court holds that the term "working days," when used in such a contract, excludes Sundays, legal holidays, and stormy days that would not permit work to be done.

Mr. Elliott, in his work on Contracts, § 3242, construes "working days" in such a contract to exclude "Sundays and legal holidays, but not stormy days, Good Friday, or a day taken off by the workmen to attend a funeral," and cites in support of such construction Hughes v. Hoskins Lumber Co. (D. C.) 136 F. 435; Hagerman v. Norton (C. C. A.) 105 F. 996; Sorensen v. Keyser (C. C. A.) 52 F. 163. We have not been cited to a Texas case construing this term. In view of the state of the decisions in reference to this term, we are of the opinion that oral evidence is admissible to show the custom and usage of such term, if there be a general custom and usage, in reference to whether legal holidays, stormy days, and Saturday afternoons should be excluded from the computation of the 55 days. We hold as a matter of law Sundays are excluded.

For the reasons above given, we are of the opinion that this case should be reversed and remanded, with instructions to the lower court to try the same in conformity to the views herein expressed.

Reversed and remanded.

### On Motion for Rehearing.

In his motion for a rehearing, appellee calls attention to the fact that the admission made by him in pleading that a certain num-

ber of days was used by him in completing his work was made in a supplemental petition and following a general denial. He urges that, as the general denial placed in issue every necessary fact for recovery by appellant on his cross-action, the subsequent admission in another paragraph of the pleading that more time was used to complete the work than authorized by the contract cannot be considered as an established fact in the case.

In making this contention, and in invoking the line of decisions that support it, appellee overlooks the fact that in his original petition, on which he went to trial, the same admission is made in general terms. After alleging the contract, he made this allegation:

"That thereafter, and immediately upon the execution of said contract, the plaintiff set about the carrying out of the same, and thereafter in due time completed said work according to the terms of said contract, and thereafter, about the —— day of December, 1923, delivered said building to the defendant, an independent contractor, to complete other work. * * * *"

The admission made in the supplemental petition is but an elaboration of the admission here made. We are of the conclusion that under the circumstances of this case the contention made by appellee cannot be sustained.

The motion for rehearing is overruled.