Appellee, W. H. King, plaintiff below, brought this suit against appellant, G. G. Wright, to recover upon and growing out of a certain building contract, and the addenda to specifications attached, in the construction of what is designated as the Circle Theater Building in the city of Dallas, Tex.
The contract, so far as it is necessary to be stated here, provides: The contract was made on the 17th day of July, 1923, between W. H. King, designated as contractor, and G. G. Wright, designated as owner. It provides that the contractor shall provide certain materials and perform all of the work in the erection of said building according to the drawings and addenda to the specifications attached as shown on the drawings of the architect, W. H. Keyser. The work under the contract was to be done under the direction of the architect, Keyser. No alterations were to be made in the work to be done except upon written order of the architect. The contractor shall complete the several portions and the whole work comprehended in the contract by and at the time or times stated, and stated to be "fifty working days from date of this contract."
Articles 7, and a part of 8, of the contract are as follows:
"Article 7: Should the contractor be delayed in the prosecution or completion of the work by the act, neglect, or default of the owner, of the architect or any other contractor, employed by the owner upon the work, or by damage caused by fire or other casualty for which the contractor is not responsible, or by combined action of workmen in no wise caused or resulting from default or collection (evidently meaning collusion) on the part of the contractor, then the time herein fixed for the competition (evidently meaning completion) of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the Architect, but no such allowance shall be made unless a claim therefor is presented in writing to the Architect within forty-eight hours of the occurrence of such delay."
"Article 8: The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractor, agrees that he will reimburse the contractor for such loss; and the contractor agrees that if he shall delay the progress of the work so as to cause loss for which the owner shall become liable then he shall reimburse the contractor for such loss."
The addenda to the specifications for the building specifies the labor and material to be done and furnished by this contractor, his contract not being for the construction of the entire building, but only to do the brick and stone work and some other parts of the work, which will be later stated where necessary.
The contract provides that the sum to be paid by the owner to the contractor for said work and materials "shall be not to exceed the sum of $26,712.50; the owner is to pay the contractor a flat fee of $2,175.00," the contractor guarantying the cost of the work *Page 99 
including the flat fee to not exceed the first sum stated. The contract further provides that, "The owner is to pay the contractor 50% of all savings from the guaranteed cost subject to additions and deductions as provided."
Plaintiff contractor sues upon the contract and attaches a copy thereof and of the addenda to his petition and makes each a part thereof. He alleges that he entered upon the performance of the contract and in due course completed same at a total cost, including said flat fee, of $25,814.28, making a total saving against the original guaranteed price of $898.22, and that defendant thereupon became indebted to him in the sum of $449.11. He alleges that he did certain extra work in the performance of said contract upon the written order of W. H. Keyser, defendant's architect, not included in the original plans and specifications, and for which defendant became obligated to pay the reasonable cost thereof in the total sum, itemized, of $2,248.09. The total for which he alleges defendant obligated to pay him is thus itemized: Cost and labor under the contract, $25,814.28; 50 per cent. of the savings on the cost, $449.11; cost of extras, $2,248.19 — making a grand total of $28,501.58.
Plaintiff alleges that defendant has paid him upon his obligation the total sum of $25,788.55, leaving a balance due of $2.713.03; that on account of the failure of defendant to furnish and provide labor and material essential to the performance by plaintiff of his contract obligations, including particularly the failure of defendant to have the steel window frames and the steel trussing and the plumbing and other work of like character and kind ready on the job at the time plaintiff had completed his work on the point of receiving same, plaintiff was forced to be idle for a total period of 29 days during which he could not perform any part of the work incident to the completion of his contract, but that during said period of 29 days he was forced to and did keep on the job as superintendent of construction at a total expense of $500. Plaintiff sues for said several amounts.
Defendant, Wright, by his third amended answer excepts generally and specially to several allegations of the petition which we will consider later, and further answered by general denial, and by special answer alleges that he executed the said contract dated the 17th day of July, 1923, providing that the contractor shall complete the several portions and the whole of the work comprehended in the contract by and at the time or times stated, namely, 50 working days from the date of the contract; that plaintiff failed and refused to comply with that provision of the contract, and did not complete the work within 50 working days from the date thereof; that the time limit prescribed in said contract expired on the 12th day of September, 1923, counting only working days, whereas plaintiff did not complete the work called for in said contract until the ninth day of November, 1923, which date was 57 days after the said 13th day of September, 1923; that the completion of said building had to wait on the completion by plaintiff of that part of the work expressed in his contract; and that the failure of plaintiff to complete his work within the time stipulated delayed the completion of the entire building for the same length of time, namely, 57 days.
Defendant alleges that on or about the 28th day of March, 1923, he entered into a contract and lease with one John H. Yeargin, Jr., wherein it was stipulated and agreed that defendant would erect a building, a part of the construction of which is involved in this suit; that by the terms of the said contract it was provided that a 15-year lease should be made of said premises to begin at the date the building was completed and ready for occupancy and that the annual rental for the first year be $15,000 per year, payable in advance in monthly installments of $1.250 per month; that said sum was a reasonable rental value for said building. It is alleged that before the contract sued on plaintiff was informed of said lease to Yeargin; that Yeargin took possession and began paying rent on said building as soon as it was completed, but by reason of plaintiff's failure to complete his contract defendant lost the rent on said building for 55 days; that the daily rental under said lease contract was $41.10, the total loss defendant alleges to be $2,260.50; that in the event it shall be held that plaintiff is entitled to recover in his suit, defendant pleads the said sum in offset; that plaintiff knew the facts stated as to the lease to Yeargin and that time was essence of said contract; that the mutual covenants contained in said contract were and are dependent and that a failure of plaintiff of performance within the time specified was and is a condition precedent to his right to recover upon said contract; that by reason thereof plaintiff is not entitled to recover upon said contract, but his cause of action, if any, is on quantum meruit. Defendant pleads an item of $51 which he alleges plaintiff was to perform and failed to do so, a part of the cement work, and which defendant was to pay.
Defendant alleges that all of the extra work described by plaintiff was alterations made in the work upon said building, and covered by the contract; that no written order of the architect was obtained for said extras or alterations as required by the contract, for which reason defendant is not liable.
Plaintiff by supplemental petition pleaded demurrers, general and special, pleads limitation of four years as to the rental value of said building, general denial; that the contract sued on was not the general contract for the construction of the building, but was for the brick work, the setting of floor joists for the first and second floors, and roof, the *Page 100 
placing of metal work on the roof, and that all other work was to be done by the owner and for which plaintiff had no responsibility for either work, labor, or material, but were separate contracts; that it is usage and custom in the building trade that working days are days not including Sundays, holidays, half-holidays (Saturday afternoons), rainy days, and days when it is impossible, for any reason, to work; that in the execution and construction of this contract this usage and custom was understood and agreed upon. Plaintiff alleges that the contract was executed on July 17, 1923, was completed on November 8, 1923, a total of 113 days; that from said total should be deducted 16 Sundays, 8 days representing 16 half-holidays (Saturday afternoons), and Labor Day, making a total of 25 days; 5 rainy days and 37 days caused by the failure of the owner to provide the labor and materials essential to the conduct of the work not included in the contract. Plaintiff alleged that the work he contracted for was performed within the 50 days.
Plaintiff pleaded the provisions of paragraph 8, set out above, providing that the owner agrees to provide all labor and materials essential to the conduct of the work not included in the contract so as not to cause delay, and in the event of failure to do so, thereby causing loss to the contractor, he will reimburse the contractor for such loss. Plaintiff alleges that the steel window frames, to be provided by the owner, were not furnished to plaintiff when the brick walls were ready to receive them, and the architect refused to permit plaintiff to continue with the brick work leaving the openings for the windows; that plaintiff was forced to call his men off the job and remain in complete idleness 5 days; that when the brick walls were at a sufficient height for the setting of the structural steel frames, the owner failed to provide them and labor necessary, and it became necessary and the architect drew and designed new plans and specifications for the measurement and installation of said steel, all of which delayed plaintiff 11 days in the completion of the contract, during which time he had to call off all labor and work; that plaintiff was forced for a period of 10 days to call his men off while the plumbing contractor completed the plumbing work in said building; that heavy rains fell during 5 days rendering it impossible to perform any work. Plaintiff alleges that 6 days were actually consumed in extra work in raising the height of the brick wall for some 6 feet around the building and laying some 35,000 additional bricks.
Plaintiff pleads other defenses to defendant's second supplemental petition which will be referred to where necessary.
Defendant filed a third supplemental answer to plaintiff's second supplemental petition, in which defendant pleaded a number of special exceptions, general denial, specially denied the custom in the building trade as to the half-holidays, and alleges that "working days" means all days except Sundays and legal holidays and such days as the weather prevents the character of the work to be done, and alleges that there were only 2 rainy days, and puts at issue other facts pleaded by plaintiff which we will not state here at length.
The trial court instructed the jury to find in favor of plaintiff, W. H. King, and against defendant, G. G. Wright, in the sum of $2,464.83, with interest from January 1, 1924, same being the amount of the cost of the building, plus the 50 per cent. bonus to be allowed, and plus the sum of $1,889.99, alterations and extras, ordered in writing by the architect, less the sums paid plaintiff and admitted in plaintiff's pleadings as the sum of $25,788.55 to which was added $100 by agreement, which eliminated oral orders of the architect.
The court further instructed the jury to find for defendant, Wright, upon his cross-action against King, the sum of $246.60, and interest, said sum representing the rental value of said premises at $41.10 per day for 6 calendar days, which said 6 calendar days is the difference from the date of the contract (July 17, 1923) and the date plaintiff completed his work under his contract (November 8, 1923), which amounts to 113 calendar days; from that 113 calendar days is deducted 107 calendar days, as follows: 50 working days allowed under the contract, 14 Sundays, 1 legal holiday, 3 rainy days, 14 Saturdays, the Saturdays figured as half-working days, 6 days' delay by reason of extra brick work, 5 days for delay in delivering steel sash, 11 days in delivering steel trusses and framing for balcony, and 10 days delay by the plumber in the plumbing work. On the instructed verdict the court entered judgment in favor of plaintiff, King, for a total recovery of $2,742.22, with interest from the date of the judgment, and all costs. From that judgment defendant, Wright, takes this appeal.
 Opinion.
This is the second appeal of this case, the former appeal being found in (Tex.Civ.App.) 292 S.W. 602.
Both parties in their briefs state that the facts in the case are undisputed. While the trial court clearly stated the number of calendar days during which the work was delayed, we think, as suggested by appellee, that the issues may be clarified by the following itemization: Elapsed time from date of contract, July 17th, to date of completion of work contracted, November 8, 1923, 113 days. Admitted days credited to contractor: Working days allowed under contract, 50; rainy days, 3; Labor Day (holiday), 1; Saturdays (10 counted half days), 5; Sundays, 10 — making 69 days. Sixty-nine days from 113 *Page 101 
days leaves 44 days delayed, as claimed by appellant.
Appellee claimed additional credits: Days required to do extra brick work, 6; extra Sunday for extra brick work, 1; extra Saturday counted as half day, 1/2; days on account of appellee's delay in installing steel sash in building, 5; days on account of appellant's delay in installing steel trusses, 11; days on account of owner's failure to do plumbing work, 10; extra Sundays in extended period, 3; extra Saturdays counted as half days, 1 1/2. These added make 38 days. To total delays chargeable to and admitted by appellee, and forming the basis of the verdict and judgment, 6 days.
Appellant claims that he is entitled to the value of the use of the building 44 days, the difference between the 69 calendar days and the 113 calendar days at $41.10 per day. Deducting from the 44 calendar days the 38 extra calendar days leaves the 6 days which the trial court allowed, and the question presented here is whether the court should have allowed 44 days as contended by appellant, or the 6 days as contended by appellee.
Appellant submitted and requested the court to find for the defendant upon cross-action the sum of $1,808.40, said amount representing the rental value of the use of the premises for the 44 calendar days' delay as contended by him, at $41.10 per day. The court refused to charge the jury as requested, and several propositions of appellant assign error on such refusal. Under the propositions the point is made that appellant is entitled to the value of the use of the premises for the 44 days' delay instead of 6, on the ground that there is neither pleading nor evidence of compliance with article 7 by appellee in order for appellee to obtain any extension of time, and that there is neither pleading nor evidence that appellant waived the provision of the contract.
We have quoted article 7 in the statement of the case. It provides that should the contractor be delayed in the prosecution or completion of the work by any act, neglect, or default of the owner, the architect, or of any other contractor, the time fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid, the extended period to be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within 48 hours of the occurrence of such delay. The record does not expressly show by pleading or evidence that any claim for extension was made or that the architect extended the period of time delayed; nor does the record show that appellant expressly waived the provision in the contract in reference to credits for delay caused by himself, or the architect, or contractors for other portions of the building. The pleadings here have probably been amended since the case was before the Dallas Court of Civil Appeals on the former trial, and we are not advised as to the pleadings on the former trial as to the question presented. However, we think it immaterial. As said by the Court of Civil Appeals on the former appeal, article 7 is manifestly for the benefit of the owner, and its strict performance of its provisions could be waived by him. A person for whose benefit anything is to be done may, if he pleases, dispense with any part of it, or circumstance in the mode of performance. The insistence of appellant is, in substance, that there is neither pleading nor evidence that extension of time for delay in the completion of the work, nor compliance with the contract as to how the extension of time for delay should be allowed, nor that appellant waived its provisions. The verbiage of article 7 shows that there might be a delay in the progress of the work, and that time for delay should not be allowed unless a claim for the delay was presented. It seems clear that the circumstances causing the delays were not altogether contemplated by article 7. They were changed somewhat from those under which the contract was made, so as to increase the height of the wall all around the building, thus necessitating additional time. Delay in delivery of steel sash, covered by other contracts; delay in delivery of steel trusses; delay of plumbing contractor. The jury found that the extra work was ordered by appellant. The appellate court on the former appeal said: "When appellant, as shown by the allegation, himself ordered the delay, the reason for this protective measure ceases, and we are of the opinion it is at least for the jury to say whether he intended by such act to waive such provision."
We think, as suggested by appellee, and as held by the court on the former appeal, that under this contract providing for the completion of work within a given number of days, the contractor will be credited for the number of days required to do extra work not contemplated in the original contract, and that he would not be chargeable with delay in doing such extra work, even in the absence of the giving of the written notice provided for in paragraph 7 of the contract. It seems to us that the delay there referred to would necessarily apply only to the work then contemplated and contracted to be done and not extra work ordered by the owner, necessarily requiring more time. Wright v. Meyer (Tex.Civ.App.)25 S.W. 1123; Mason v. Rempe (Tex.Civ.App.) 41 S.W. 694; Wilkens v. Wilkerson (Tex.Civ.App.) 41 S.W. 178. But if we should be mistaken in that, and if it should be held that the delay and the notice provided in paragraph 7 includes all delays whether on the work then contracted to be done and extra work not then contracted to be done, paragraph 8, a part of the same contract, provides *Page 102 
that the owner shall provide all labor and materials essential to the conduct of the work not included in the contract so as not to cause delay, and in the event of failure so to do, thereby causing loss to the contractor, the owner agrees to reimburse the contractor for such loss. If the "loss to the contractor" includes or embraces the "delay in its progress" of the work to be done by the contractor not included in the contract, it would seem to follow that such delay and such extra work would be the loss for which the owner agrees to reimburse the contractor. Paragraph 8 has some meaning and some application to the work then being contracted to be done, and it would seem to apply to delay caused by the owner and to the furnishing of labor and material not included in the contract, extra work and material; that is, such delay and loss to the contractor ordered by the owner. Included in the extra work was the bracing and anchoring of the steel balcony frame, to be furnished by the owner. It came about a month after appellee should have completed his contract.
It would seem a harsh construction of the contract to hold that the contractor must give notice of such delay. It would seem that such delay was not within the contemplation of the contract, or as said by Chief Justice Jones on the former appeal, under such circumstances the reason for the notice ceased: or as said in the case of Firestone Tire 
Rubber Co. v. Bridge Co., 247 F. 625, Circuit Court of Appeals, under a similar provision in a contract, that the stipulation as in paragraph 7 does not exclusively control the question of the notice to be given under circumstances beyond the contractor's reasonable control; or, as here, a delay of such length, carrying a penalty, and caused by the owner and of which the owner and the architect must have had notice. Also, as in Caldwell Drake v. Schmulbach (C. C.) 175 F. 430, where the delay was mutual as to the owner and contractor, after citing many authorities, and in Jefferson Hotel Co. v. Bumbaugh (C.C.A.) 168 F. 867, 874, the court states the statutory rule to the effect that the courts will not attempt to apportion such delays even where the causes for such delays have been mutual, but will refuse to enforce the penalty. Other cases might also be cited to the same effect, such as Weeks v. Little,89 N.Y. 566; Hughes Produce Co. v. Pulley, 47 Utah, 544, 155 P. 337, L.R.A. 1916D, 728; King Iron Bridge Mfg. Co. v. City of St. Louis (C. C.) 43 F. 768, 10 L.R.A. 826; Shurter v. Butler, 43 Tex. Civ. App. 353,94 S.W. 1084; Van Buren v. Digges, 11 How. 461, 13 L.Ed. 771; Alexander v. Good Marble Tile Co. (Tex.Civ.App.) 4 S.W.2d 636, a writ refused, where it is said by Chief Justice Hickman for the Eastland Court: "It is elementary that the owner is not entitled to recover damages brought about by his own wrong, regardless of whether the contract expressly so provided."
The ultimate and only controlling question in the case is as to the number of days' delay properly chargeable to appellee.
We need not discuss other questions presented. We have reviewed them and are of the opinion they present no reversible error.
The case is affirmed.